STATE of Wisconsin, Plaintiff-Respondent,†

v.

Richard A. MOECK, Defendant-Appellant.

Court of Appeals

*No. 03–0002–CR. Submitted on briefs November 7, 2003.—
Decided February 5, 2004.*

2004 WI App 47

(Also reported in 677 N.W.2d 648.)

† Petition to review granted 5-12-04.

729

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David D. Cook*, Monroe.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. DYKMAN, J.   Richard A. Moeck appeals from a judgment of conviction and an order denying postconviction relief. He asserts that his fourth trial constituted double jeopardy because there was no manifest necessity to order a mistrial in his third trial.[1] We agree that the fourth trial violated Moeck's constitutional protection against double jeopardy and reverse.

## BACKGROUND

¶ 2.   This case has an extensive history. Moeck was tried four times on charges including two counts of

---

[1] Moeck also argues: (1) the State's thirty-three month delay in testing evidence violated his rights to due process, to present a defense, against self-incrimination, and to compulsory process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and art. I, secs. 7 and 8 of the Wisconsin Constitution; (2) the State's closing argument violated these same rights; and (3) his counsel was ineffective. He also brings to our attention *State v. Zimmerman*, 2003 WI App 196, 266 Wis. 2d 1005, 669 N.W.2d 762, *review denied,* 2004 WI 20, 269 Wis. 2d 199, 675 N.W.2d 805, decided after briefing was completed. Because the double jeopardy issue is dispositive, we need not address these arguments or consider *Zimmerman*.

sexual assault, false imprisonment, intimidating a victim, and robbery. We omit the details of these charges because they are not probative of the issues on appeal. We focus on the third trial, where the pertinent facts concern Moeck's opening statement and the trial court's deliberation regarding the mistrial. Moeck's third trial was held before Judge Dennis Montabon.

¶ 3.   Moeck's opening statement provided an alternate theory for what happened during the alleged assault. His counsel told the jury that the alleged victim arrived at Moeck's home in the middle of the night under the influence of drugs and asked for a place to sleep, but no sexual acts occurred between him and the alleged victim. Moeck never presented any evidence at trial, however, to support this alternate theory. After the State rested its case, Moeck decided not to testify. His counsel asserted that he did not know Moeck would not testify until after the State presented its case.

¶ 4.   At the close of the trial, the State requested that the trial court instruct the jury to disregard the unsupported theory Moeck proffered in the opening statement. Moeck asserted that the court could resolve the problem with a jury instruction.

¶ 5.   The trial court considered Moeck's opening statement improper, reasoning that a defendant cannot tell a jury what the evidence will show and then not show it. It maintained that Moeck should have reserved his opening statement until after the State's case if he was considering not testifying. The trial court believed that the State was "in a bind in argument because they can't directly comment on the defendant not testifying" because of the right not to incriminate oneself. The trial court then proposed a jury instruction to resolve the impropriety, which read:   "Remarks of the attorneys are not evidence. If the remarks implied the existence of

certain facts not in evidence, disregard any such implication and draw no inference from the remarks." However, it gave the State the option of choosing between the jury instruction and a mistrial:

> THE COURT:   Do you want to go ahead or not? I mean, I told [the State], it's on the record, I'm not gonna take it back, I think under—the State under the circumstances now would be entitled to a mistrial if they wanted one. My logic for that is that scenario is in the jury's mind without subject, as we do in trials, to cross-examination.
>
> [THE STATE]:   I think I'm gonna ask for a mistrial, Judge. I'm not gonna be able to erase those facts. I can't argue them on—in my oral argument because I didn't have a chance to cross-examine him about it. It's not even out there before the jury.

The trial court declared a mistrial.

¶ 6.   Prior to his fourth trial, Moeck moved to dismiss the complaint on double jeopardy grounds. The trial court denied the motion in a written opinion. Moeck petitioned this court for leave to appeal. We granted the petition and summarily affirmed, reasoning that the trial court's written opinion "applie[d] the proper legal standard to the relevant facts and reache[d] the correct conclusion." However, we failed to review the transcript showing the trial court's reasoning when it granted the State's request for a mistrial.

¶ 7.   At the hearing on Moeck's motion to dismiss, Moeck told Judge Montabon that he wanted a speedy trial, and complained that he had been subjected to prosecution for over three years. Because the trial court's calendar was filled, the case was assigned to Judge Michael Kirchman. At Moeck's fourth trial, the jury convicted him of all charges. In motions after

734

verdict, Moeck asserted that the fourth trial constituted double jeopardy. Judge Kirchman denied the motion in a written opinion.

## STANDARD OF REVIEW

¶ 8.   This appeal requires us to review whether the trial court erred when it determined there was a manifest necessity to terminate the third trial. We must first determine which trial court decision we review. Moeck's notice of appeal shows that he is appealing from the judgment of conviction, sentence, and order denying postconviction relief, which are all Judge Kirchman's decisions. Ordinarily, we would review those decisions. But *State v. Seefeldt*, 2003 WI 47, ¶ 13, 261 Wis. 2d 383, 661 N.W.2d 822 (citation omitted), holds otherwise:

> A circuit court's exercise of discretion in ordering a mistrial is accorded a level of deference that varies depending on the particular facts of the case. Regardless of the level of deference to be applied, an appellate court must, at a minimum, satisfy itself that the circuit court exercised sound discretion in ordering a mistrial.

This language from *Seefeldt* leaves no alternative to reviewing the transcript of Judge Montabon's decision when he granted the State's request for a mistrial, despite the fact that we are reviewing a judgment of conviction and an order rendered by Judge Kirchman.

¶ 9.   We adhere to the following guidelines when reviewing the trial court's discretion:

> Sound discretion means acting in a rational and responsible manner. Sound discretion includes, without

limitation, acting in a deliberate manner taking sufficient time in responding to a prosecutor's request for a mistrial. It requires giving both parties a full opportunity to explain their positions and considering alternatives such as a curative instruction or sanctioning counsel. Sound discretion is not exercised when the circuit court fails to consider the facts of record under the relevant law, bases its conclusion on an error of law or does not reason its way to a rational conclusion.

*Id.*, ¶ 36. The Wisconsin Supreme Court applied these guidelines in *Seefeldt*, 261 Wis. 2d 383. The court did not specify exactly what level of deference it gave the trial court's decision "because, regardless of the level of deference, [it] determine[d] that the circuit court did not exercise sound discretion in ordering the mistrial." *Id.*, ¶ 34. It clarified, though, that cases where the prosecutor requests a mistrial do not always require strict scrutiny. *Id.*, ¶ 33. It declared such a rule too broad; rather, the level of deference depends on the facts of the case. *Id.*

¶ 10. For the reasons discussed below, we conclude that the trial court erroneously exercised its discretion; even great deference would not alter our conclusion.

## DISCUSSION

¶ 11. Moeck asserts that the fourth trial violated his right against double jeopardy because there was no manifest necessity to terminate the third trial. He offers several reasons for why the opening statement was lawful. Primarily he argues that his attorney made his opening statement with the reasonable expectation that Moeck would testify. He notes that he had testified in two of his other trials. He also argues that a curative instruction would have adequately dispelled any preju-

dice resulting from the opening statement. He claims the trial judge did not make a reasoned determination that a mistrial was necessary, as opposed to a curative instruction.

¶ 12. We turn to *Seefeldt* for guidance on this issue. In that case, the State moved for a mistrial because the defendant violated a pretrial order by mentioning other acts evidence in his opening statement. The trial court granted the State's motion because it determined a curative instruction could not remove the prejudicial impact of the statement. *Id.*, ¶ 9. The supreme court concluded that the trial judge did not exercise sound discretion because the defendant's controversial statements "would likely have been admissible during trial and the record does not reflect that the judge considered whether the evidence would ultimately be admissible." *Id.*, ¶ 38. Additionally, it found the trial court's deliberation to be inadequate:

> [T]he trial judge did not provide sufficient opportunity for the parties to present, and for the judge to consider, arguments regarding whether a mistrial should be ordered and the possible alternatives to a mistrial.

*Id.* The brief hearing the trial court held did not allow the parties "a full opportunity to explain their positions on the propriety of a mistrial." *Id.*, ¶ 42. It also considered the trial court's reaction to the violation of the pretrial order to be severe:

> We recognize that it appears that defense counsel violated a pretrial order when he made the statements . . . . However, this is not a basis for a mistrial unless the violation creates that high degree of necessity required by the double jeopardy clause . . . .
>
> Further, although the trial judge expressed his belief that no cautionary instruction could cure the

737

improper comment, this belief seems to be unfounded because the evidence was likely admissible . . . . [T]he record does not reflect that the trial judge explored alternatives to granting a mistrial, such as imposing sanctions on defense counsel.

*Id.*, ¶¶ 40–41.

██

¶ 13. Applying *Seefeldt*, we conclude the trial court erred by not exercising its discretion. The record shows that the trial court allowed the State to determine whether there was manifest necessity to terminate the third trial.[2] Such discretion resides only with the judiciary. Further, the record does not support a determination that there was a high degree of necessity for a mistrial.[3] The trial court did not consider the alternative of imposing sanctions on counsel, if a sanction was warranted. The record also shows that the trial court would have considered its proposed jury instruction a proper cure, if the State wished to pursue that alternative.

¶ 14. The State asserts that a jury instruction would not have cured the opening statement because it would have reminded the jury that Moeck did not

[2] The trial court asked the State: "Is that your final answer, Ms. Matousek?" When the State's attorney answered, "yes," the court declared a mistrial.

[3] "The Supreme Court refined its definition of 'manifest necessity' . . . [and] held that while the word need not be interpreted literally, a 'high degree' of necessity must be found 'before concluding that a mistrial is appropriate.'" *State v. Barthels*, 174 Wis. 2d 173, 183, 495 N.W.2d 341 (1993) (quoting *Arizona v. Washington*, 434 U.S. 497, 506, 98 S. Ct. 824 (1987)).

testify.[4] The State provides no authority for this argument. Moeck contends *Frazier v. Cupp*, 394 U.S. 731, 89 S. Ct. 1420 (1969) controls this issue. In that case, the prosecutor failed to produce evidence he forecasted in his opening statement because a witness invoked his privilege against self-incrimination. *Id.* at 733. The Supreme Court reasoned that a curative instruction may suffice when the error was "no more than an objective summary of evidence which the prosecutor reasonably expected to produce." *Id.* at 736. It considered persuasive the fact that the jury was told the opening statement was not evidence. *Id.* at 735. The Wisconsin Supreme Court has likewise reasoned that "improper remarks by a prosecutor are not necessarily prejudicial where objections are promptly made and sustained and where curative instructions and admonitions are given by the court." *Hoppe v. State*, 74 Wis. 2d 107, 120, 246 N.W.2d 122 (1976). We consider these principles applicable here, where defense counsel has made assertions in an opening statement which were not borne out by the evidence. In light of the constitutional safeguards against prosecutorial misconduct, it is illogical that a prosecutor, but not defense counsel, may cure such a statement with a jury instruction.

¶ 15. Accordingly, we conclude a proper jury instruction would have resolved the issue. We also disagree with the State's contention that it was unable to address the unsupported assertions in its closing statement. The State could have quoted the proposed jury instruction to stress that opening statements are not evidence the jury could use in deliberations. This com-

---

[4] We find it curious that the State complains of harm to the defendant though the defendant would have been satisfied with the instruction.

ment would not have violated Moeck's privilege against self-incrimination as the State suggests. An attorney's failure to produce promised evidence is not lost on a jury. The result can be devastating.

¶ 16. The State also argues that the trial court gave the parties ample opportunity to discuss the impact of the improper argument. It distinguishes *Seefeldt*, where the trial court declared a mistrial immediately following the offending argument, because the trial court here waited until the close of Moeck's evidence to declare a mistrial. We do not consider this distinction persuasive. Here, the trial court held a brief hearing immediately at the close of evidence, which is the first time the trial court knew that no evidence supported Moeck's statements. It declared the mistrial that same day, as in *Seefeldt*. And it let the State decide whether the court should grant a mistrial.

¶ 17. *Seefeldt* recognized the importance of fair deliberation on the issue of manifest necessity. Here, there was little deliberation because the trial court left the mistrial decision up to the State. The hearing in this case falls short of allowing the parties a full opportunity to argue the propriety of a mistrial.

¶ 18. The State also argues that the parties were able to fully present their positions at the hearing in front of Judge Montabon regarding Moeck's motion to dismiss. However, the purpose of giving the parties an adequate, pre-mistrial opportunity to argue their positions is to make sure that the court considers all aspects in exercising its discretion. An opportunity to argue after that decision has been made and the jury dismissed does not serve that purpose. Even though Moeck and the State were able to argue their positions later, that does not change the fact that the trial court

delegated the mistrial decision to the State after initially concluding that a curative instruction would have sufficed.

¶ 19.　Finally, the State urges us to apply the law of the case doctrine. It argues that we have already rejected Moeck's double jeopardy challenges in his interlocutory appeal and postconviction habeas corpus action and that Moeck has not offered anything new to warrant a different result in this action. Moeck contends that we should not bind him to the law of the case because the Wisconsin Supreme Court decided *Seefeldt* after our prior rulings. He also notes that our prior rulings were summary dispositions that did not have the benefit of full briefing.

¶ 20.　The law of the case doctrine is a "longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." *Univest Corp. v. Gen. Split Corp.*, 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989) (citation omitted). We are not bound to follow the doctrine, however. *Id.* at 38–39 (clarifying the doctrine is not "a rule to be inexorably followed in every case"). We may disregard it in the interest of justice or "in certain circumstances when 'cogent, substantial, and proper reasons exist.' " *Id.* at 39 (citation omitted).

¶ 21.　Those circumstances are present here. When we reviewed Moeck's petition for review, we examined Judge Montabon's written order and not his oral decision on the State's motion for a mistrial. Though the two are similar in some respects, the oral decision makes clear that the trial court left the mistrial decision up to the State. The trial court would have

given a curative instruction had the State requested that instead of a mistrial. And the court reasoned that defense counsel's failure to produce evidence promised in opening statement necessitated a mistrial. Had we reviewed the transcript, we would have observed this.

¶ 22. In sum, we conclude that the record does not support a determination that there was manifest necessity to terminate the third trial. There was no such necessity: a curative instruction would have sufficed and the State could have reminded the jury that the trial court would instruct them that defense counsel's statements were not evidence. The State could have embellished and commented upon this instruction at length without infringing on or even mentioning Moeck's right not to incriminate himself.

¶ 23. We do not reach the underlying issue of whether a defendant's attorney may mention facts in an opening statement and then fail to support those facts at trial because the defendant fails to testify. The State does not address this issue on appeal, though defendant's decision not to testify was the reason the State gave at trial for desiring a mistrial. Thus, we have no guidance on how the defendant's ultimate decision whether to testify squares with his attorney's pretrial decision to make an opening statement before the State presents its case. *See State v. Albright*, 96 Wis. 2d 122, 133 n.8, 291 N.W.2d 487 (1980) ("The defendant should be given the ultimate decision on waiving the right to testify."). Forcing a defendant to choose between testifying and a mistrial because counsel has made an opening statement forecasting the defendant's testimony raises a question the parties have not briefed. Nor have the parties fully briefed whether defense attorneys must forego opening statements because they are not positive that their clients will testify. Instead, we con-

clude that the trial court erroneously exercised its discretion because, like the trial court in *Seefeldt*, it did not exercise its discretion when it allowed the State to chose between a curative instruction and a mistrial, and by failing to explore alternatives to a mistrial.

*By the Court.*—Judgment and order reversed.

¶ 24 VERGERONT, J. (*concurring*). I write separately to comment on an issue referred to in ¶ 23—whether counsel acted improperly, as the trial court stated, in giving Moeck's version of events in opening argument and then not presenting evidence of that version. Although Moeck argues that the trial court erred in concluding this was improper, the State does not develop an argument in support of the trial court's conclusion. That is one reason we should not address the issue. However, the more important reason in my view—one that the majority opinion does not mention—is that under *State v. Seefeldt*, 2003 WI 47, ¶¶ 40–41, 261 Wis. 2d 383, 661 N.W.2d 822, even if a defense counsel's conduct is improper, that is not a basis for a mistrial unless that conduct creates the high degree of necessity required by the double jeopardy clause. In *Seefeldt* the court held that defense counsel's statements in violation of a pretrial court order were not a basis for a mistrial unless the violation created that high degree of necessity required by the double jeopardy clause. *Id.*, ¶ 40. Thus, whether or not defense counsel here should have done something other than what he did—and I am not suggesting that he should have—the trial court still had an obligation to exercise its discretion by exploring alternatives to a mistrial. *See id.*, ¶ 41. I agree with the majority opinion that the trial court here did not do that.

¶ 25.   As for the reference in ¶ 23 to a defendant's right not to testify, neither the trial court nor the State has suggested that Moeck did not have the right not to testify. I therefore see no reason to mention this issue.

¶ 26.   For these reasons, I respectfully concur.