State of Wisconsin, Plaintiff-Respondent,
v.
Michael J. Kidd, Defendant-Appellant.
No. 03-3425-CR.
Court of Appeals of Wisconsin.
Opinion Filed: August 26, 2004.
¶1 DEININGER, P.J.[1]
Michael Kidd appeals an order entered following remand in his earlier appeal of a judgment convicting him of operating a motor vehicle while under the influence of an intoxicant (OMVWI), as a fourth offense.[2]See State v. Kidd, No. 02-0533-CR, unpublished slip op. (WI App June 6, 2002). We previously concluded that Kidd had made a prima facie showing that two previous OMVWI convictions were obtained in violation of his Sixth Amendment right to counsel. Id., ¶1. Accordingly, we concluded that the trial court had erred in denying Kidd's motion to exclude the two prior offenses for purposes of sentencing on his present conviction. We directed that the State be given the opportunity on remand to show that "despite the inadequacy of the records at the time Kidd entered his pleas," he was, in fact, aware of the difficulties and disadvantages of self-representation at the time he entered guilty pleas, pro se, to the prior offenses. Id., ¶6.
¶2 Following an evidentiary hearing on remand, the trial court found that the State had made the requisite showing, and it entered an order again denying Kidd's motion to exclude the two prior convictions for sentencing purposes. Kidd appeals that order, claiming the trial court erred in finding that he was aware of the disadvantages of proceeding pro se when he waived counsel and pled guilty to each of the two prior offenses at issue. We conclude that the two prior convictions were not obtained in violation of Kidd's Sixth Amendment right to counsel under the U.S. Supreme Court's recent holding in Iowa v. Tovar, 124 S. Ct. 1379 (2004), where the court explained the requirements for a constitutionally valid waiver of counsel incident to entering a plea. Accordingly, we affirm the appealed order.

BACKGROUND
¶3 Kidd was convicted of two separate charges of OMVWI in 1991, his second and third offenses.[3] Kidd appeared pro se in each case and entered a plea of no contest in the first and of guilty in the second. In this case, he was found guilty of a fourth OMVWI, which occurred in 2000. Kidd moved to exclude the two 1991 convictions from consideration for sentencing purposes, claiming that each resulted from invalid waivers of counsel. The circuit court denied the motion, convicted Kidd of fourth-offense OMVWI and imposed a sentence that included 270 days in jail and a fine and costs totaling $2,771. Kidd filed his first appeal, whose outcome we have described above.
¶4 Kidd was the lone witness at the evidentiary hearing following our remand. He testified that he was "about 22" years old at the time of the 1991 convictions and that he had graduated from high school and obtained "auto body, technical" training thereafter. He acknowledged that he understood the charges were for "drunk driving" and that he faced a jail sentence if convicted. He also testified that he deliberately chose to plead guilty or no contest without legal representation for the following reasons:
At that time ... the way I looked at it, a lawyer was going to cost me money, and from the evidence there in front of me, I was guilty. So I wanted to work out a plea bargain that would get me in jail, get it done with and get on with my life.
Kidd explained further that "the way I was thinking at the time, there was not anything a lawyer could do for me."[4]
¶5 The State attempted through adverse examination to force Kidd to admit that he understood, at least generally, that an attorney, because of his or her legal training, would know more about "the law and the requirements of a court proceeding" than he did. Kidd resisted these attempts, however, acknowledging only that a lawyer would have known more about the legal proceedings, but that "I thought I knew as much as I needed to know. They had the evidence there to convict me. I wanted to get it done." The prosecutor also posed hypotheticals regarding the advantages of consulting professionals for medical care or auto body work, and he asked Kidd if he had ever "seen lawyers on TV." While still avoiding a direct response indicating that he understood that a lawyer might have pursued legal or factual defenses of which he was unaware, Kidd did acknowledge that he had heard "that lawyers could get people off on technicalities."
¶6 The trial court determined that Kidd had knowingly and voluntarily waived his right to counsel at the time of each 1991 conviction. Noting that Kidd had given "coy answers to some of the fairly simple questions presented to him," the court found that "he was aware of those advantages and disadvantages." Accordingly, the court reaffirmed the judgment of conviction and the sentence imposed for a fourth OMVWI conviction. Kidd appeals, claiming that the totality of the record does not affirmatively show that he was aware of the advantages of representation by an attorney, or of the difficulties and disadvantages of selfrepresentation, at the time of his two 1991 convictions.

ANALYSIS
¶7 After Kidd filed the present appeal, the United States Supreme Court decided Iowa v. Tovar, 124 S. Ct. 1379 (2004), a case involving facts similar to those before us now. The defendant in Tovar collaterally attacked a prior OMVWI conviction that would have increased his penalties for a new offense, asserting that his waiver of counsel was not knowing, voluntary and intelligent because the court in the prior case had not warned him of the dangers and disadvantages of self-representation. Tovar, 124 S. Ct. at 1385-86. The Iowa Supreme Court concluded that, to comply with the Sixth Amendment, a court must inform a defendant who wishes to waive counsel of two things: (1) "that there are defenses to criminal charges that may not be known by laypersons and that the danger in waiving the assistance of counsel in deciding whether to plead guilty is the risk that a viable defense will be overlooked"; and (2) "that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty." Id. at 1389.
¶8 The U.S. Supreme Court, however, disagreed, concluding instead that the Sixth Amendment does not mandate these admonitions as a prelude to waiving counsel for purposes of entering a guilty plea. Id. The Court noted that the information a defendant needs in order to intelligently waive counsel will vary according to the stage of the proceedings at which waiver occurs, with a "less searching or formal colloquy" being sufficient for pretrial stages than is required when a defendant wishes to proceed to trial unrepresented. Id. at 1388 (citing Patterson v. Illinois, 487 U.S. 285 (1989)). Explaining that "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel," the Court concluded that Tovar had not met this burden:
Tovar has never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty. Further, he has never "articulated[d] with precision" the additional information counsel could have provided, given the simplicity of the charge. Nor does he assert that he was unaware of his right to be counseled prior to and at his arraignment....
Id. at 1390 (citation omitted).[5]
¶9 Had Tovar been decided prior to our disposition of Kidd's earlier appeal, we would likely have concluded that he had not established a prima facie showing that his 1991 convictions were obtained in violation of the Sixth Amendment.[6] In any event, we so conclude now.[7] We noted in our earlier decision that, in both prior OMVWI cases, Kidd had been advised by the trial courts "of his right to an attorney and that if he could not afford one, an attorney would be appointed at county expense." Kidd, No. 02-0533-CR, unpublished slip op. at ¶4. We also noted that Kidd's only challenge to his prior waivers of counsel was based on the failure of the records to affirmatively establish his awareness of the difficulties and disadvantages of self-representation. Id., ¶2. That is, Kidd effectively conceded that his choices to proceed without counsel were deliberate and that he was aware on both occasions of the nature and seriousness of the OMVWI charges and the range of penalties he faced, concessions that our review of the record validates.
¶10 In other words, the records of Kidd's 1991 convictions were very similar to the record of the Tovar defendant's prior uncounseled guilty plea and conviction, which the Supreme Court concluded did not demonstrate a constitutional violation. The Court specifically concluded that, when an unrepresented defendant wishes to forgo a trial and enter a plea of guilty or no contest, the Sixth Amendment is satisfied "when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." Tovar, 124 S. Ct. at 1381. The record before us demonstrates that these requirements were met for each of Kidd's 1991 convictions, and, thus, they were not obtained in violation of the Sixth Amendment.
¶11 It of course remains true that the trial courts that accepted Kidd's pleas in 1991 did not give him admonitions regarding "the difficulties and disadvantages of self-representation" as subsequently mandated by the Wisconsin Supreme Court in State v. Klessig, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997). And, as we previously concluded, prior to the evidentiary hearing on remand, the record did not affirmatively show that Kidd was aware of those difficulties and disadvantages, as required by Pickens v. State, 96 Wis. 2d 549, 563-64, 292 N.W.2d 601 (1980). These failings, however, while perhaps entitling a Wisconsin defendant to withdraw a guilty plea as a matter of state decisional law, do not rise to the level of a Sixth Amendment violation. See Tovar, 124 S. Ct. at 1390 (noting that states "are free to adopt by statute, rule, or decision any guides to the acceptance of an uncounseled plea they deem useful," but that judicial admonitions regarding the disadvantages of self-representation are not required by the U.S. Constitution).[8]
¶12 The only infirmity in a prior conviction that provides valid grounds to exclude it for purposes of enhancing the penalty on a subsequent conviction is "a violation of the constitutional right to a lawyer." State v. Hahn, 2000 WI 118, ¶4, 238 Wis. 2d 889, 618 N.W.2d 528 (emphasis added); see also State v. Peters, 2001 WI 74, ¶14, 244 Wis. 2d 470, 628 N.W.2d 797 (describing the holding in Hahn as being "that a defendant generally may not collaterally attack the validity of a prior conviction during an enhanced sentence proceeding predicated on the prior conviction unless the offender alleges a violation of his constitutional right to counsel" (emphasis added)). Because, under the holding in Tovar, that constitutional right was not violated on either occasion in 1991, we conclude that the trial court did not err in sentencing Kidd for a fourth OMVWI offense in this case.
¶13 Kidd contends, however, that we should not apply the holding in Tovar to his 1991 convictions because they were "final" and thus not amenable to the retroactive application of new rules of criminal procedure. We reject Kidd's claim that our application of Tovar in this case contravenes the law regarding retroactive application of new criminal precedents. We acknowledge that, in general, whether a new rule of criminal procedure applies retroactively depends primarily on the procedural posture of the case. State v. Lagundoye, 2004 WI 4, ¶12, 268 Wis. 2d 77, 674 N.W.2d 526. Wisconsin adheres to the federal rule established in Griffith v. Kentucky, 79 U.S. 314, 328 (1987), that new procedural rules apply retroactively to all cases pending on direct review and all cases still in the direct appeal pipeline. Id. On the other hand, new rules of criminal procedure generally do not apply retroactively to cases that were final before issuance of the new rule, id., ¶13, which Kidd claims is the case here.[9]
¶14 There can be no dispute that, even though Kidd was convicted of OMVWI in this case on November 21, 2001, his conviction is still in the "direct appeal pipeline" and is therefore not yet "final." We reversed the judgment of conviction on June 6, 2002; further proceedings were conducted in the circuit court, resulting in an order reaffirming the original judgment; Kidd filed a timely notice of appeal of that order; and the case is again before us in the posture of a direct appeal. It is his 1991 convictions that Kidd claims were final before Tovar was decided, which they plainly were. See Lagundoye, 268 Wis. 2d 77, ¶20 ("A case is final if the prosecution is no longer pending, a judgment or conviction has been entered, the right to a state court appeal from a final judgment has been exhausted, and time for certiorari review in the United States Supreme Court has expired."). Kidd appealed neither 1991 conviction, and his right to seek direct review thus expired years ago.
¶15 That does not mean, however, that the present case constitutes a collateral "review" of those convictions, such that we cannot apply the Tovar holding in evaluating whether either conviction was obtained in violation of Kidd's Sixth Amendment rights. The matter before us is a direct appeal of Kidd's 2001 OMVWI conviction, raising the issue of whether the court in this case erred in imposing sentence for a fourth OMVWI offense. Even though a motion such as Kidd's to exclude a prior conviction for sentence enhancement purposes is sometimes referred to as a collateral attack on the prior conviction, see, e.g., Peters, 244 Wis. 2d 470, ¶1, this appeal does not present a challenge to a prior conviction that, if successful, will result in the setting aside or modification of a "final" judgment of conviction, such as may be achieved via WIS. STAT. § 974.06 or habeas corpus proceedings. Put another way, regardless of what we decide regarding the "counting" or not of the 1991 convictions in this case for sentence enhancement purposes, the 1991 convictions will not be affected and their finality will not be compromised.
¶16 Because our present inquiry will not determine whether Kidd should obtain relief from his 1991 convictions but whether they may be used to enhance the penalty imposed for his 2001 conviction, we conclude that the rule prohibiting retroactive application of new rules of criminal procedure when conducting a collateral review of a final conviction does not apply. The procedural posture of this case is identical to that in Tovar, where the U.S. Supreme Court unanimously concluded that an Iowa trial court had correctly determined that a 1996 OMVWI conviction based on an uncounseled guilty plea could be used to enhance the penalty for a 2001 conviction, despite the lack of a judicial admonition in the 1996 case regarding the difficulties and disadvantages of self-representation. As we have explained, the holding in Tovar compels us to conclude that Kidd's 1991 convictions may similarly be counted in this case for purposes of determining his sentence on the present conviction. Accordingly, it is not necessary for us to address whether the trial court correctly found on remand that Kidd was, in fact, aware of the difficulties and disadvantages of self-representation despite the courts' failures to specifically warn him of them when accepting his pleas to the 1991 offenses.[10]

CONCLUSION
¶17 For the reasons stated above, we affirm the appealed order and the judgment of conviction that it reinstated.
By the Court.  Order affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The trial court also found Kidd guilty of operating a motor vehicle with a prohibited alcohol concentration "for acts arising out of the same incident or occurrence" but imposed sentence for only one offense. See WIS. STAT. § 346.63(1)(c).
[3] We note that, if these two convictions were excluded for sentencing purposes, Kidd would apparently be subject to only a civil forfeiture for a first OMVWI offense, not the criminal penalties imposed for a second offense. This is because his first conviction was for an offense that occurred in 1989, more than ten years prior to the date of the present offense, October 25, 2000. See WIS. STAT. § 346.65(2)(b) (specifying that for second offense penalties to apply, the two offenses must occur "within a 10-year period"). The ten-year limitation for determining a second offense, however, does not apply when three or more prior convictions are considered for sentencing purposes. See § 346.65(2)(c)-(e).
[4] Kidd also acknowledged that he knew that representation by a public defender was a possibility, but he did not "follow up on that," explaining again that "the lawyer could possibly drag it out, delay it and end up not getting me as good of a deal as what I had at that moment."
[5] The Supreme Court also observed that the warnings prescribed by the Iowa Supreme Court might not have served to enlighten a defendant's decision whether to seek or waive counsel, and that they might even confuse or mislead a defendant:

The warnings the Iowa Supreme Court declared mandatory might be misconstrued as a veiled suggestion that a meritorious defense exists or that the defendant could plead to a lesser charge, when neither prospect is a realistic one. If a defendant delays his plea in the vain hope that counsel could uncover a tenable basis for contesting or reducing the criminal charge, the prompt disposition of the case will be impeded, and the resources of either the State (if the defendant is indigent) or the defendant himself (if he is financially ineligible for appointed counsel) will be wasted.
Iowa v. Tovar, 124 S. Ct. 1379, 1390 (2004).
[6] We decided Kidd's prior appeal on June 6, 2002. The trial court conducted the evidentiary hearing on remand on September 2, 2003. The present appeal was fully briefed and submitted for decision on March 5, 2004, and the Supreme Court decided Tovar on March 8, 2004. Both parties thereafter submitted supplemental memoranda regarding the impact, if any, of the Tovar holding on the disposition of this appeal.
[7] We are cognizant of the law of the case doctrine, "a `longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" State v. Moeck, 2004 WI App 47, ¶20, 270 Wis. 2d 729, 677 N.W.2d 648 (citation omitted). Not only is the application of the doctrine a matter for judicial discretion because it is "a question of court practice, and not an inexorable rule," there are recognized exceptions to its application, one of which occurs when "controlling authority has since made a contrary decision of the law applicable to such issues." State v. Brady, 130 Wis. 2d 443, 448, 388 N.W.2d 151 (1986). We conclude that given the Supreme Court's holding in Tovar, we are not bound by the law of the case doctrine to abide by our prior decision that Kidd made a prima facie showing that his 1991 OMVWI convictions were obtained in violation of this Sixth Amendment right to counsel.
[8] In addition, we note that in both Klessig and Pickens, the defendants represented themselves at trial. Given the distinction noted in Tovar between waivers of counsel for purposes of trial as opposed to entering a plea, it could be argued that the requirements of Klessig and Pickens apply to only the former, although neither holding expressly includes such a limitation.
[9] If what the U.S. Supreme Court announced in Tovar was a new rule of "substantive criminal law," or if it was a procedural rule, but not a "new" one, there would apparently be no bar to our applying it retroactively to any conviction, regardless of whether it was no longer in the "direct appeal pipeline." See State v. Lagundoye, 2004 WI 4, ¶¶12, 26, 268 Wis. 2d 77, 674 N.W.2d 526. The supreme court has explained that "`substantive law is that which declares what acts are crimes and prescribes the punishment therefor; whereas, procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished.'" Id., ¶21 (citation omitted). "`A case announces a new rule if the result was not dictated by precedent at the time the defendant's conviction became final.'" State v. Lo, 2003 WI 107, ¶62 n.12, 264 Wis. 2d 1, 665 N.W.2d 756 (citation omitted). For purposes of our analysis, we will assume, without deciding, that the Court announced in Tovar a "new rule of criminal procedure."
[10] The assessment of Kidd's knowledge in 1991 as to the difficulties and disadvantages of self-representation is a finding of fact, which we will not disturb unless it is clearly erroneous, giving due regard to the opportunity of the trial court to evaluate the credibility of the witness. Amoco Oil Co. v. Capitol Indem. Corp., 95 Wis. 2d 530, 542, 291 N.W.2d 883 (Ct. App. 1980). Even though we need not do so, we note that our review of the transcript of the evidentiary hearing conducted on remand persuades us that the trial court's finding was not clearly erroneous.

Under the clearly erroneous standard of review, "we are to search the record for evidence to support findings reached by the trial court, not for evidence to support findings the trial court did not but could have reached." Id. Kidd testified at the evidentiary hearing that he simply did not believe at the time that there was anything that a lawyer could do for him in defending the two 1991 OMVWI charges. Although Kidd correctly notes that the trial court did not expressly find this testimony incredible, the court's remarks show that it did not accept his attempts to deny all awareness of what lawyers know and do. The trial court stated that "Mr. Kidd's ... coy answers to some of the fairly simple questions presented to him ... indicates that he has an apprehension and appreciation and an understanding[] of the proceedings; that ... he was aware of those advantages and disadvantages."
Kidd testified that he perceived on each occasion in 1991 that the State had sufficient evidence to convict him of OMVWI, that he was willing to accept the consequences of his wrongful conduct, and that he wished to do so as quickly as possible so that he could "get on with his life." He was adamant that he specifically wanted to avoid the expense and delay that obtaining counsel would involve. We conclude that this testimony supports the trial court's finding that Kidd made a knowing and rational decision to waive counsel on both occasions in 1991, possessed of a general awareness regarding the benefits (or lack thereof) that obtaining counsel would afford him. As the U.S. Supreme Court noted in Tovar, it is not always in a defendant's interest to "delay[] his plea in the vain hope that counsel could uncover a tenable basis for contesting or reducing the criminal charge." Tovar, 124 S. Ct. at 1390. (See footnote 5.)