STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Richard A. MOECK, Defendant-Appellant.

Supreme Court

*No. 2003AP2–CR. Oral argument January 5, 2005.—Decided May 6, 2005.*

2005 WI 57

(Also reported in 695 N.W.2d 783.)

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief by *David D. Cook,* Monroe, and oral argument by *David D. Cook.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals[1] reversing a judgment of conviction and an order denying post-conviction relief of the

---

[1] *State v. Moeck,* 2004 WI App 47, 270 Wis. 2d 729, 677 N.W.2d 648.

Circuit Court for La Crosse County, Michael Kirchman, Judge. The judgment and order stem from a fourth trial in which Richard Moeck, the defendant, was convicted of two counts of first degree sexual assault, one count of false imprisonment, one count of robbery, and one count of intimidation of a victim. In denying the defendant's motion for post-conviction relief, the circuit court concluded that the defendant's fourth trial following a mistrial in the third trial did not violate double jeopardy protections.

¶ 2. The court of appeals reversed the circuit court's judgment of conviction and order denying post-conviction relief. The court of appeals concluded that there was not a manifest necessity caused by defense counsel's opening statement in the third trial sufficient to warrant a mistrial, and therefore the fourth trial violated the defendant's right to be free from double jeopardy.

¶ 3. Two issues are presented to this court. First, did the court of appeals err as a matter of law in rejecting the State's argument that the "law of the case" doctrine applied because on two prior occasions the court of appeals rejected the defendant's challenge to the circuit court's order for a mistrial in the third trial? Second, were the Double Jeopardy Clauses of the U.S. and Wisconsin Constitutions violated when the defendant was retried a fourth time following a mistrial in the third trial on the basis of defense counsel's opening statement?

¶ 4. We hold that the court of appeals did not err as a matter of law in holding that the "law of the case" doctrine did not apply to the defendant's most recent challenge in the court of appeals to the circuit court's order granting a mistrial in the defendant's third trial. We further hold that because the State did not meet its

burden of showing a manifest necessity for the termination of the third trial, the circuit court erred in granting the State's motion for a mistrial. Accordingly we agree with the court of appeals that the fourth trial violated the defendant's right to be free from double jeopardy. We therefore affirm the decision of the court of appeals.

I

¶ 5. In addressing the first issue, the application of the law of the case doctrine, we set forth a brief narration of the procedural posture of the instant case and then examine whether the law of the case doctrine bars the court of appeals from overturning its two earlier decisions affirming the circuit court's order declaring a mistrial.

A

¶ 6. The following facts are undisputed. The defendant has been prosecuted four times for allegedly sexually assaulting and robbing the complainant, C.S., on August 2, 1997.

¶ 7. The defendant's first trial was in January 1998. The defendant testified. The trial ended in a hung jury.

¶ 8. The defendant's second trial was in March 1998. The defendant testified. The jury convicted the defendant. The conviction was overturned by the court of appeals in October 1999, on the ground that the circuit court committed reversible error in denying the defendant's request for a mistrial after the circuit court, during voir dire, inadvertently mentioned the defendant's repeat offender status three times. The court of appeals held that the curative jury instruction was not sufficient to correct the error.

¶ 9. The defendant's third trial was in March 2000. The defendant did not testify. The circuit court granted the State's motion for mistrial at the close of all the evidence. The defendant objected to the motion for mistrial. The events surrounding the mistrial are the subject of this review.

¶ 10. The defendant's fourth trial was in November 2000 before a different circuit court judge than the defendant's three prior trials.

¶ 11. The defendant moved to dismiss the fourth trial on double jeopardy grounds, arguing that there was no manifest necessity for ordering the mistrial at the third trial. The circuit court denied the motion; the court of appeals granted the defendant's leave to appeal the nonfinal order and affirmed the circuit court's order denying the defendant's motion to dismiss the fourth prosecution.

¶ 12. The defendant did not testify at the fourth trial. The jury convicted the defendant on all counts.

¶ 13. After the jury returned verdicts in the fourth trial finding him guilty, the defendant filed a petition for a writ of habeas corpus in the court of appeals challenging the effectiveness of counsel on the pretrial interlocutory appeal. The court of appeals concluded that, even assuming deficient performance, the defendant failed to prove prejudice because "no amount of advocacy would have convinced this court [of appeals] that the trial court unreasonably exercised its discretion [in granting a mistrial]."

¶ 14. The defendant then filed a postconviction motion in circuit court, again challenging the fourth trial on double jeopardy grounds. The circuit court once again rejected the defendant's double jeopardy challenge.

¶ 15. On the defendant's appeal of the conviction and order, raising his double jeopardy challenge for the

third time, the court of appeals agreed with the defendant's double jeopardy argument, reversing the judgment of conviction and the order denying the defendant's motion for post-conviction relief. We granted the State's petition for review.

¶ 16. This review is a review of the court of appeals decision reversing a judgment of conviction and order entered in the defendant's fourth trial.[2] With respect to the law of the case doctrine, we are reviewing the court of appeals' decision in the instant case to disregard its two prior rulings upholding the validity of the circuit court's declaring a mistrial in the third trial. As we have explained, the court of appeals had twice ruled in the State's favor on the validity of the circuit court's declaring a mistrial. On the defendant's third challenge to the mistrial on appeal from the judgment of conviction, the court of appeals ruled against the State.

B

■

¶ 17. We now determine whether the law of the case doctrine bars the court of appeals from overturning its earlier decisions affirming the circuit court's order declaring a mistrial.

■

¶ 18. The law of the case doctrine is a "longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal."[3]

---

[2] *Moeck,* 270 Wis. 2d 729, ¶ 8.

[3] *Univest Corp. v. Gen. Split Corp.,* 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989).

¶ 19. The State argues that because the court of appeals twice ruled that the circuit court's discretionary grant of a mistrial in the third trial was not violative of due process, the court of appeals violated the law of the case doctrine in the present case. There is no question that the court of appeals "reversed itself" in the instant case when it ruled that the circuit court erred in granting a mistrial in the third trial.

¶ 20. In response to the defendant's first double jeopardy challenge, the court of appeals declared in September 2000 that there was manifest necessity for the mistrial in the third trial and therefore there was no double jeopardy violation.

¶ 21. In response to the defendant's second double jeopardy challenge, the court of appeals held in June 2002 that no double jeopardy violation resulted from the mistrial.

¶ 22. In response to the defendant's third double jeopardy challenge, the court of appeals reversed course, holding for the defendant that the fourth trial was a violation of the prohibition against double jeopardy.

¶ 23. According to the State, when the issue of the validity of the mistrial arose a third time in the court of appeals, the court of appeals should have adhered to its two prior rulings that the circuit court did not err in granting the mistrial. The State argues that the defendant's double jeopardy challenge should have failed once again.

¶ 24. The issue of whether the two prior decisions of the court of appeals establish the law of the case raises a question of law that this court determines

independently of the court of appeals, benefiting from the analysis of the court of appeals.[4]

¶ 25. The State recognizes, and we agree, that the law of the case doctrine is not an absolute rule that must be inexorably followed in every case.[5] Courts have the power "to disregard the rule of 'law of the case' in the interests of justice" and to reconsider prior rulings in a case.[6] We have recognized that " 'cogent, substantial, and proper reasons exist' " under which a court may disregard the doctrine and reconsider prior rulings in a case.[7]

¶ 26. The court of appeals' third review in the instant case of the defendant's double jeopardy challenge to the circuit court's declaration of the mistrial was apparently based on the same standard of review as were its first two reviews.[8] It had determined twice

---

[4] *State v. Wurtz,* 141 Wis. 2d 795, 799, 416 N.W.2d 623 (Ct. App. 1987).

[5] "[T]he law of the case doctrine is not a rule to which this court is bound by any legislative enactment, nor it is a rule to be inexorably followed in every case." *Univest,* 148 Wis. 2d at 38–39.

[6] *State v. Brady,* 130 Wis. 2d 443, 448, 388 N.W.2d 151 (1986) (quoting *McGovern v. Eckhart,* 200 Wis. 64, 75, 227 N.W. 300 (1929)). The United States Supreme Court has stated similar reasons. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988).

[7] *Univest,* 148 Wis. 2d at 39 (quoting *Brady,* 130 Wis. 2d at 447 (citing *McGovern,* 200 Wis. at 78)).

[8] The parties debate whether *State v. Seefeldt,* 2003 WI 47, 261 Wis. 2d 383, 661 N.W.2d 822, changed the deferential erroneous exercise of discretion standard for review the court had previously adopted in double jeopardy cases. The defendant argues that *Seefeldt,* issued after the two court of appeals

289

before that the circuit court had not erroneously exercised its discretion in granting the mistrial. The difference warranting the court of appeals' reversing itself is that in the instant case the court of appeals examined all the facts, not just an incomplete version of the facts as it had before.

¶ 27. The court of appeals had based its prior decision that the circuit court properly exercised its discretion only on the circuit court's written order. In the instant case the court of appeals properly considered and based its decision on the transcript of the circuit court's oral decision. The court of appeals candidly acknowledged in the instant case that its prior summary order rejecting the defendant's double jeopardy challenges erroneously failed to take into account the circuit court's oral decision to grant a mistrial. Instead, the prior order relied on only the circuit court's later written decision.

¶ 28. The oral decision, in contrast to the written decision, demonstrated that in declaring a mistrial the circuit court erred as a matter of law in failing to exercise its discretion and by abdicating its responsibility to the State.[9]

¶ 29. At the State's request we examined the circuit court's oral and written decisions and conclude, as did the court of appeals, that they are different. Thus, the facts upon which the court of appeals relied

decisions affirming the circuit court's denial of the defendant's double jeopardy challenge, changed the standard for review. The State counters that *Seefeldt* was not a change in the law and therefore should not be the basis for departure from the law of the case doctrine. We need not address this issue because the departure from the law of the case doctrine is justified on other grounds.

[9] *Moeck,* 270 Wis. 2d 729, ¶ 21.

changed between its first two rulings on double jeopardy and its decision in the instant case.

¶ 30. The court of appeals' failure to examine fully the circumstances surrounding the circuit court's grant of the mistrial in the third trial provides a cogent, substantial, and proper reason for the court of appeals' disregarding the law of the case doctrine in the instant case. The court of appeals' admitted lapses in considering the defendant's double jeopardy challenge should not eviscerate the defendant's constitutional protections. Although the court of appeals used the abdication issue, which was highlighted by the transcript of the oral proceedings, as grounds for disregarding the law of the case doctrine, we conclude, as will be discussed below, that the circuit court's failure to consider fully the prosecutor's ability to countermand defense counsel's opening statement, as well as the court's ability to give a curative jury instruction, are cogent, substantial, and proper reasons for revisiting the double jeopardy challenge.

¶ 31. We therefore conclude that the court of appeals properly disregarded the law of the case doctrine in the instant case. The prudential law of the case doctrine is not a bar in the instant case to the court of appeals' reexamination of the defendant's double jeopardy challenge.

II

¶ 32. We turn now to the second issue presented, double jeopardy. We must determine whether "the circuit court erred [in the third trial] when it determined that the State met its burden of showing the requisite manifest necessity to support the mistrial order that

terminated" the defendant's third trial.[10] We examine in turn: (A) the constitutional protection against double jeopardy and the manifest necessity standard used to determine whether a mistrial should be ordered; (B) the level of deference to be applied to a circuit court's mistrial order; (C) the circumstances leading up to the granting of the mistrial; and (D) our application of the constitutional principles and standard of review to the circumstances of the case.

## A

¶ 33. The Fifth Amendment of the U.S. Constitution[11] and Article I, § 8 of the Wisconsin Constitution[12] provide that a defendant may not be put in jeopardy twice for the same offense.[13] We recently explored the constitutional doctrine of double jeopardy in *State v. Seefeldt,* 2003 WI 47, ¶¶ 15–19, 261 Wis. 2d 383, 661 N.W.2d 822. That decision guides this case.

¶ 34. "Jeopardy" means exposure to the risk of determination of guilt. It attaches when the selection of the jury has been completed and the jury is sworn. The parties here do not dispute that jeopardy attached in all

---

[10] *Seefeldt,* 261 Wis. 2d 383, ¶ 13.

[11] The Fifth Amendment to the U.S. Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

[12] Article I, § 8 of the Wisconsin Constitution provides: "[N]o person for the same offense may be put twice in jeopardy of punishment . . . ." This court has been guided by U.S. Supreme Court double jeopardy jurisprudence in construing Wisconsin's double jeopardy prohibition. *Seefeldt,* 261 Wis. 2d 383, ¶ 15 n.4 (citing *State v. Barthels,* 174 Wis. 2d 173, 181, 495 N.W.2d 341 (1993)).

[13] *Seefeldt,* 261 Wis. 2d 383, ¶ 15.

four trials. The constitutional protection against double jeopardy "embraces the defendant's valued right to have his trial completed by a particular tribunal."[14] The protection against double jeopardy thus limits the State's ability to request that a trial be terminated and then restarted with a different jury.

¶ 35. Underlying the protection against cumulative trials are the principles of fairness and finality. "The underlying idea, one that is deeply ingrained . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."[15] Courts have recognized that the double jeopardy protection may be subverted if a circuit court terminates a trial prior to verdict, thereby taking from an accused the opportunity to gain an acquittal when the prosecution has been less persuasive than anticipated.[16]

¶ 36. An accused's right to have a trial concluded by a particular tribunal can be, under certain circumstances, subordinated to the public interest in affording the State one full and fair opportunity to present its evidence to an impartial jury.[17]

---

[14] *Arizona v. Washington,* 434 U.S. 497, 503 (1978) (internal quotation and citation omitted).

[15] *Green v. United States,* 355 U.S. 184, 187–88 (1957). *See also State v. Barthels,* 174 Wis. 2d 173, 181–82, 459 N.W.2d 341 (1993) (quoting *Green*); *State v. Comstock,* 168 Wis. 2d 915, 937, 485 N.W.2d 354 (1992).

[16] *Green,* 355 U.S. at 188.

[17] *Washington,* 434 U.S. at 505.

¶ 37. A mistrial is warranted if the mistrial is "manifestly necessary." The State bears the burden to demonstrate that a " 'manifest necessity' [exists] for any mistrial ordered over the objection of the defendant."[18] A "manifest necessity" warranting a mistrial is a high degree of necessity.[19] The determination whether a manifest necessity exists is a fact-intensive question. If the State does not meet this burden, the State is not permitted to commence another trial against the accused.

¶ 38. The circuit court granted the State's motion for a mistrial in the third trial after the jury had been sworn, and the defendant objected to the State's motion. Accordingly, the circuit court's granting the mistrial implicated the double jeopardy clause. The State was thus required to demonstrate that there was a manifest necessity to terminate the third trial.

¶ 39. The defendant asserts that his constitutional right against double jeopardy was violated by his fourth trial because no manifest necessity existed for a mistrial after the close of evidence during the third trial.

---

[18] *Seefeldt,* 261 Wis. 2d 383, ¶ 19.

[19] *Id.* (citing *Washington,* 434 U.S. at 505; *Barthels,* 174 Wis. 2d at 183). This court has also cited approvingly Justice Story's articulation of the manifest necessity test: "Courts of justice [may] discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Barthels,* 174 Wis. 2d at 183 (citing *State v. Copening,* 100 Wis. 2d 700, 709, 303 N.W.2d 821 (1981) (quoting *United States v. Perez,* 22 U.S. (9 Wheaton) 579, 580 (1824)).

¶ 40. Before reviewing the record to determine whether the State has met its burden, we address the level of deference this court must accord a circuit court's discretionary order declaring a mistrial.

¶ 41. The level of deference we accord a circuit court's order for a mistrial depends on the particular facts of each case.[20] There is a spectrum of deference to a circuit court's exercise of its discretion in granting a mistrial.[21] In cases like the present one, in which a mistrial was ordered on the basis of defense counsel's opening statement, a circuit court's determination "is entitled to special respect."[22]

¶ 42. The conclusion that a circuit court's exercise of discretion is entitled to special respect does not end the inquiry. Because of the constitutional implications of double jeopardy, an appellate court must satisfy itself that a circuit court exercised "sound discretion" in declaring a mistrial.[23]

¶ 43. This court has articulated various considerations that factor into determining whether a court exercised sound discretion. We have described sound

---

[20] *Seefeldt,* 261 Wis. 2d 383, ¶ 13 (citing *State v. Barthels,* 174 Wis. 2d 173, 184, 495 N.W.2d 341 (1993)).

[21] *Id.,* ¶ 25 (citing *Washington,* 434 U.S. at 507–08).

[22] *Id.,* ¶ 27 (quoting *Washington,* 434 U.S. at 510).

[23] *Washington,* 434 U.S. at 514. "Regardless of the level of deference to be applied, an appellate court must, at a minimum, satisfy itself that the circuit court exercised sound discretion in ordering a mistrial." *Seefeldt,* 261 Wis. 2d 383, ¶ 13 (citing *Washington,* 434 U.S. at 514 (1978)).

discretion as "acting in a rational and responsible manner."[24] Sound discretion further includes "acting in a deliberate manner taking sufficient time in responding to a prosecutor's request for a mistrial."[25] Sound discretion requires giving both parties a full opportunity to explain their positions and considering alternatives such as a curative instruction or sanctioning counsel.[26] Sound discretion also requires that a circuit court ensure that the record reflects that there is an adequate basis for a finding of manifest necessity.[27] Finally, "[s]ound discretion is not exercised when the circuit court fails to consider the facts of record under the relevant law, bases its conclusion on an error of law or does not reason its way to a rational conclusion."[28]

¶ 44. We conclude, as we did in *Seefeldt,* that "regardless of the level of deference to be applied in this case, the circuit court erred in terminating [the defendant's prior trial]."[29]

## C

¶ 45. We now examine the events at the third trial in the circuit court leading to the mistrial.

¶ 46. The incident that gave rise to the mistrial occurred early in the defendant's third trial. During opening arguments defense counsel discussed at length the defendant's anticipated trial testimony. Defense counsel told the jury that the defendant would testify that the victim was lying, that no assault or robbery

---

[24] *Seefeldt,* 261 Wis. 2d 383, ¶ 36.

[25] *Id.*

[26] *Id.*

[27] *Id.,* ¶ 37.

[28] *Id.,* ¶ 36.

[29] *Id.,* ¶ 14.

occurred, that the victim offered to sell drugs to the defendant, that the victim stole money out of the defendant's wallet, and that the victim went to the police with a false accusation of sexual assault and robbery. The defense counsel thus painted the victim as a drug user and dealer, a liar, and a thief. The defense counsel presented the defendant's version of the events of August 2, 1997, as follows:

> On this morning, ladies and gentlemen, what happened, Rich is asleep in his apartment. [C.S.] knocks on the door. Rich says it was 3:09 in the morning because there was a digital clock up on his refrigerator and he wakes up and he happens to notice the time. He recognizes [C.S.] from a meeting that they had a month ago at Kenny's Pub here in La Crosse and at that time they discussed casual marijuana use and Rich said, you know, if you're ever looking to sell some, you know, stop by. [C.S.] comes to Rich's apartment with marijuana looking to sell marijuana that night to Rich. He also asks if he can crash at his place and, in fact, he does spend the evening at Rich's apartment. The reason he stays there is 'cause he says he's tired and he's high at that point. He tells Rich that he had taken a couple hits of LSD just prior to him getting to his apartment.
>
> The next morning they wake up and they discuss this marijuana and Rich says, well, I only want 20 or $30 worth. Rich then goes out into the hallway where the bathrooms are. He doesn't have a bathroom in his apartment. It's out in the hallway. He goes out there. He comes back in, and he notices that the money that was on the counter is now gone. It's missing, and he asks [S.], well, where's the money, and [S.] denies, well, I don't have the money. And he says, where's the money, and finally [S.] says, okay, I've got it, and he pulls it out of his sock and gives him his money. At that point Rich is mad and he kicks and pushes him out of the apartment, kicks him out of the building, out the back fire door which is just outside of his apartment door.

At that point [S.] is gone. Rich goes back into his apartment, grabs something to eat, goes back to sleep, and then he's awakened at 11 or a little after 11 o'clock by the police that morning and they execute a search warrant and Rich is arrested.

And that story, ladies and gentlemen, is the only story that's been consistent throughout this case. ... (R.233:30–31.)

¶ 47. The prosecuting attorney objected several times during defense counsel's opening statement, but not to this description of the defendant's version of the events of August 2, 1997.

¶ 48. The victim and police officer testified and were subject to defense counsel's cross-examination. The cross-examination pointed out inconsistencies in the victim's statements and the weaknesses in the police officer's investigation, including failure to collect biological evidence and failure to interview neighbors or bar patrons who might corroborate the victim's story.

¶ 49. Although the defendant had testified at his first two trials, the defendant did not testify during the third trial.[30] The defendant's decision not to testify was apparently made at the close of the State's evidence. The defendant and his counsel apparently were confident that the State had failed to meet its burden of proof. As a result, the defendant did not present any evidence to substantiate defense counsel's opening statement of the defendant's version of the events. The defendant's version was thus presented to the jury through defense counsel's opening statement. The State had no opportunity to cross-examine the defendant.

---

[30] The defendant also did not testify at his fourth trial.

298

¶ 50. During the jury instruction conference, the State requested a curative instruction to address defense counsel's opening statement. The State presented its view as follows:

> Judge, and that's one that in this case [defense counsel] got up in his opening statement and he argued in the opening statement about facts that are in no way in evidence concerning the fact[s in that portion of the opening statement.] . . . I mean, he went through the whole scenario, and we have heard that scenario before when the defendant has testified at the previous trials. Now, however, the defendant has opted not to testify and all of that evidence is in there from the opening statement. There has been no evidence presented at all to corroborate that and now he doesn't put the defendant on to make any effort to corroborate it, so I think that's completely unethical, but aside from that, I think that there has to be an instruction to the jury that they are to disregard that and not consider any of that portion of the opening statement. (R.233:300.)

¶ 51. Defense counsel explained that he could not know when making his opening statement that the defendant would opt not to testify, especially given that the defendant had testified at two earlier trials conducted by another defense attorney.

¶ 52. The State, defense counsel, and the circuit court discussed the wording of a curative instruction.

¶ 53. The prosecuting attorney was concerned what, if any, argument she could make in response to defense counsel's unsubstantiated opening statement. The prosecuting attorney did not want to run the risk of making improper comments on the defendant's failure to testify, an error that might necessitate yet another trial. The prosecuting attorney sought clarification of what she would be allowed to say in closing argument. She explained:

I would have every intention of not being very kind to [defense counsel] in that closing argument regarding that, and I think I should have the opportunity to, you know, at least make that statement, that a fictional tale was presented and there has been no effort to support that with any evidence. He's basically slinging mud at a victim without any effort to support his statements.

¶ 54. In response, defense counsel suggested a curative instruction and stated that he doubted the jurors are "gonna hang their hat on something that I said ten hours ago." The circuit court reacted to defense counsel's remarks, saying: "It's not quite that simple . . . . "

¶ 55. Although defense counsel was willing to waive any objection to the prosecuting attorney's reference to the defendant's failure to testify, the defendant was not.

¶ 56. The circuit court acknowledged the State's dilemma: The defendant in effect put in his defense without testifying; the State was not able to cross-examine the defendant; and the extent to which the State could comment on the defendant's failure to testify without courting reversible error was unclear.[31] The circuit court explained the dilemma as follows:

Yeah, it seems to me the State is in a bind, you know, and might well be entitled to a mistrial. This is the instruction I propose to try to correct that, but the State is gonna be in a bind in argument because they can't directly comment on the defendant not testifying . . . . (R.233:302.)

[31] *See Griffin v. California,* 380 U.S. 609, 614–15 (1965) (the right to remain silent is violated when during a criminal trial the State comments on an accused's silence).

¶ 57. After discussion among the prosecuting attorney, defense counsel, the defendant, and the circuit court, the circuit court explained that it was willing to give the jury an instruction that statements of the attorneys are not evidence. The circuit court also mentioned that the State might consider a motion for a mistrial. The circuit court concluded that "the State under the circumstances now would be entitled to a mistrial if they wanted one."

¶ 58. The circuit court then asked the State whether it wanted to proceed with a curative instruction or to seek a mistrial:

> Do you want to go ahead or not? I mean, I told [the prosecutor], it's on the record, I'm not gonna take it back, I think under—the State under the circumstances now would be entitled to a mistrial if they wanted one. My logic for that is that scenario is in the jury's mind without subject, as we do in trials, to cross-examination. (R.233:306.)

¶ 59. The prosecutor, an assistant district attorney, conferred with the district attorney regarding whether to ask for a mistrial. The State then requested a mistrial, contending that a curative instruction would not erase the defendant's version of the events from the jurors' minds:

> I think I'm gonna ask for a mistrial, Judge. I'm not gonna be able to erase those facts. I can't argue them on—in my oral argument because I didn't have a chance to cross-examine him about it. It's not even out there before the jury. (R.233:307.)

¶ 60. The circuit court then asked the State: "Is that your final answer . . . ?" The State responded "Yes." The circuit court declared a mistrial.

## D

¶ 61. We now apply the principles of constitutional protection against double jeopardy and the standard of review to the facts of the case.

¶ 62. We approach this part of the opinion bearing in mind a concern about "gamesmanship" in opening statements. The trepidation is that a defense counsel or an accused will use an opening statement to furnish a defense unsupported by evidence. A savvy accused would then invoke his or her right not to testify. This tactic would result in the jury having heard the accused's unchallenged theory of the case, denying the State the opportunity to cross-examine the accused. The State does not contend that defense counsel was engaging in gamesmanship or sandbagging or acting in bad faith when defense counsel made opening statements at the defendant's third trial. Therefore, gamesmanship, sandbagging and bad faith by the defendant or defense counsel are not at issue in the instant case.

¶ 63. We agree with the State that defense counsel "should not allude to any evidence unless there is good faith and reasonable basis for believing such evidence will be tendered and admitted in evidence."[32] The Rules of Professional Conduct for Attorneys also address this issue, providing that a lawyer shall not "in trial, allude to any matter that . . . will not be supported by admissible evidence."[33] We also agree with the State that it is unfair to an opposing party to allow an

---

[32] American Bar Ass'n, *Standards for Criminal Justice— Prosecution Function and Defense Function,* § 4–7.4, at 218–19 (3d ed. 1993).

[33] SCR 20:3.4(e).

attorney to present to the jury statements not susceptible to proof but that are intended to influence the jury in reaching a verdict.[34]

¶ 64. The circuit court and the State take the position that defense counsel's opening statement was improper because the evidence did not support the opening statement.

¶ 65. The State does not contend that defense counsel's opening statement was in bad faith, that is, the State does not contend that defense counsel had a reasonable basis to believe that his opening statement would not be supported by admissible evidence. The defendant's position in the present case is that defense counsel's opening statement was offered with the reasonable expectation that the defendant would testify and that the opening statement conformed to the defendant's testimony in the prior trials. Defense counsel asserted that he expected the defendant to testify (as the defendant had in prior trials), but he did not know in fact whether the defendant would testify.[35]

¶ 66. Because this case does not raise the issue of an attorney's making an opening statement in bad faith, we do not address that circumstance.

¶ 67. The State understandably expresses irritation with defense counsel for not waiting until the outset of the defense case to present his opening statement. This simple measure could have prevented the mistrial. The circuit court expressed similar senti-

---

[34] *United States v. Dinitz,* 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).

[35] The instant case can be compared with *Arizona v. Washington,* in which the defendant's opening argument referred to inadmissible evidence. *Washington,* 434 U.S. at 499–500.

ments. We must recognize, however, that defense counsel had the right to make an opening statement when he did, as long as it was made in good faith, and that nothing would have kept his client from opting not to testify at the last moment.

¶ 68. We agree with the State that a circuit court may, in an appropriate case, declare a mistrial on the basis of an opening statement that summarizes evidence that is not produced. We disagree with the State, however, that the circuit court exercised sound discretion in granting the mistrial in the defendant's third trial.

¶ 69. The circuit court did not exercise sound discretion, according to the defendant and the court of appeals, when the circuit court committed an error of law by abdicating its discretion to the State. The defendant argues and the court of appeals held that the State, not the circuit court, decided whether to grant a mistrial.[36] If this view of the record is accepted, the circuit court erred by not deciding the question of a mistrial, instead allowing the State to choose between a curative jury instruction and a mistrial.[37]

¶ 70. We need not determine whether the circuit court abdicated its responsibility to the State or whether the circuit court was merely asking the State and the defense counsel about their respective views of a mistrial.

¶ 71. We conclude that the circuit court did not exercise sound discretion in declaring a mistrial when it failed to give adequate consideration to the State's ability to refer to the defendant's silence and to the

---

[36] *Moeck,* 270 Wis. 2d 729, ¶ 13.

[37] *Id.,* ¶ 23.

effectiveness of a curative jury instruction. Although the circuit court expressed its belief that the State's response and a curative jury instruction could not rectify any prejudice caused by defense counsel's opening statement, this belief is unfounded.

¶ 72. We have described sound discretion as "acting in a rational and responsible manner."[38] Sound discretion is not exercised when a circuit court bases its declaration of a mistrial on an error of law. Sound discretion includes considering alternatives such as a curative jury instruction.

¶ 73. The circuit court erred as a matter of law in its assessment of the State's inability in closing argument to rebut the defense counsel's opening statement. The circuit court overstated the difficulty the prosecuting attorney would have in both commenting on the weakness of the opening statement and avoiding error by referring to the defendant's failure to testify.

¶ 74. The circuit court was correct that a prosecuting attorney ordinarily may not comment on an accused's decision not to testify.[39] There are circumstances, however, when an accused "opens the door" to a measured response by the prosecuting attorney.[40] The defendant opened the door in the instant case. It is impossible to draw "a bright line for all cases between

---

[38] *Seefeldt,* 261 Wis. 2d 383, ¶ 36.

[39] *Griffin v. California,* 380 U.S. 609, 614–15 (1965).

[40] *United States v. Robinson,* 485 U.S. 25, 31–34 (1988); *State v. Keith,* 216 Wis. 2d 61, 80–83, 573 N.W.2d 888 (Ct. App. 1997); *State v. Johnson,* 121 Wis. 2d 237, 247–49, 358 N.W.2d 824 (Ct. App. 1984).

permissible and impermissible comment;"[41] whether a prosecutorial comment crosses over "into the forbidden area of comment on an accused's failure to testify"[42] and "violates constitutional rights must be made case by case."[43] We conclude, however, under the circumstances of the instant case, that the circuit court did not give adequate consideration to the State's response and to a curative instruction.

¶ 75. The circuit court's error of law is evidenced by *State v. Johnson,* 121 Wis. 2d 237, 358 N.W.2d 824 (Ct. App. 1984), in which the court of appeals addressed a prosecutor's ability to comment on an accused's failure to testify after the accused gave his account of events during opening statements but later refused to testify. In *Johnson,* the defendant gave his own opening statement, but later did not take the stand in his own defense.

¶ 76. In closing remarks, the prosecutor in *Johnson* drew the jury's attention to the distinction between argument and evidence.[44] The court of appeals

---

[41] *State v. Edwardsen,* 146 Wis. 2d 198, 215, 430 N.W.2d 604 (Ct. App. 1988).

[42] *Id.*

[43] *Id.*

[44] In *Johnson* the relevant portion of the prosecutor's closing argument was as follows:

Let's reflect first upon the opening statement that was given by [the defendant]. First of all just as in my opening statement you understand that [the defendant] was not testifying. [The defendant] was not under oath, [the defendant] was not subjecting himself to cross examination in that opening statement. What he said he was entitled to say just as I was entitled to tell you what I did during my opening statement but it was not evidence, not when I said what I said and when [the defendant] said what he said but remember some of the things he said in that prepared statement he read. He said that the State would not be able to

306

in *Johnson* affirmed the circuit court's allowing the prosecutor's closing arguments.[45] The court of appeals explained the validity of the prosecutor's statements in *Johnson* as follows:

> The [prosecutor's closing] remarks were aimed at drawing the jury's attention to the distinction between arguments and evidence. This is in precise keeping with the thrust of the standard instruction concerning arguments of counsel. In both opening and closing statements, the prosecutor equated [the defendant's] statement with his own (the prosecutor's) and stressed that neither constituted evidence. Indeed, the prosecutor invited close juror attention to what both he and [the defendant] had to say.[46]

¶ 77. The circuit court erred as a matter of law in the instant case by concluding that the prosecuting attorney could not effectively countermand defense counsel's opening statement.[47]

---

prove what he intended to do on that evening. I submit to you that we have proved beyond any doubt whatsoever what he intended to do that evening and we will review that evidence and see whether you don't agree with me on that.

*Johnson,* 121 Wis. 2d at 243–44 n.2.

[45] *See also Edwardsen,* 146 Wis. 2d at 214 (when the accused comments on his own silence and gives factual reasons for that silence, the State does not violate the defendant's constitutional right by presenting other explanations to the jury; the State is commenting on unsworn testimony and not on the accused's right to silence).

[46] *Johnson,* 121 Wis. 2d at 247–48.

[47] The State argues that the circuit court was reasonable in declaring a mistrial rather than giving a curative instruction in light of the procedural history of the case. The court of appeals had held that a curative instruction was not sufficient in the second trial to correct the error caused by the circuit court's

¶ 78. The jury, after the prosecutor's closing argument and a curative jury instruction, could have been sufficiently admonished in the instant case that any unsubstantiated statements made by defense counsel in opening statements do not constitute evidence. Any prejudice to the State by defense counsel's opening statement would be outweighed by defense counsel's loss of credibility with the jury for his unsubstantiated opening statement.

¶ 79. We therefore conclude that in the instant case the prosecuting attorney's closing argument referring to defense counsel's opening statement as unsubstantiated, along with a curative jury instruction that opening and closing statements are arguments, not evidence, would have cured any possible prejudice resulting from defense counsel's opening statement. Accordingly, we conclude that it was unreasonable as a matter of law for the circuit court to conclude that there was a manifest necessity requiring a mistrial in the third trial.

\* \* \* \*

¶ 80. For the foregoing reasons, we hold that the court of appeals did not err as a matter of law in holding that the "law of the case" doctrine did not apply to the defendant's third challenge in the court of appeals to the circuit court's granting a mistrial in the third trial. We further hold that because the State did not meet its

inadvertent reference during voir dire to the defendant's status as a repeat offender. The State argues that with a curative instruction the State risked a reversal for violation of the defendant's Fifth Amendment privilege against self-incrimination. Perhaps, but a reversal would enable the State to bring yet another prosecution. A mistrial here means the State cannot bring another prosecution.

burden of showing a manifest necessity for the termination of the third trial, the circuit court erred in granting the State's motion for a mistrial. Accordingly, we agree with the court of appeals that the fourth trial violated the defendant's protection against double jeopardy. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 81. PATIENCE DRAKE ROGGENSACK, J., did not participate.

¶ 82. JON P. WILCOX, J. (*dissenting*). I dissent. In the words of the United States Supreme Court:

> Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

*Arizona v. Washington,* 434 U.S. 497, 513 (1978). In *Washington,* the trial judge granted a mistrial after the jury was exposed to improper comments during defense counsel's opening statement. *Id.* at 499–501. When reviewing the trial judge's decision to grant a mistrial, the Court concluded: "[T]he overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Id.* at 511. Further, the Court warned of the serious consequences that would follow if "retrial of the

defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently from the trial judge[.]" *Id.* at 509–10.

¶ 83. Following the deferential standard of review set forth in *Washington* and the standard for manifest necessity, I would uphold the circuit court's order granting a mistrial as a proper exercise of discretion. Here, the main thrust of defense counsel's opening statement was that the victim was a liar and that the defendant would inform the jury as to what really happened the night in question. Defense counsel then went on to explain in great detail the defendant's version of events and relayed the testimony his client had provided in the previous trials. In addition, counsel informed the jury as to the details of the defendant's personal and family life. As the circuit court summarized: "It was a detailed statement of dope and out the door and the money and everything else." No other defense was presented during the opening statement. However, the defendant never testified, and no other witness substantiated the version of events presented during the opening statement. Further, defense counsel later admitted to the court that he was unsure if the defendant would take the stand at the time he made his opening remarks.

¶ 84. Thus, the defense was able to fully present its theory of the case to the jury without presenting any evidence to support that theory or subjecting the defendant to cross-examination. Regardless of whether defense counsel's opening statement was made in good faith, the fact remains that the defendant was able to present his entire theory of the case without actually introducing any evidence.

¶ 85. The circuit court considered these facts, the effect the opening statement may have had upon the

jury, and the prosecution's ability to make an adequate closing statement in light of the defendant's refusal to testify. The circuit court considered the possibility of issuing a curative instruction and gave both parties an opportunity to present their positions. *See State v. Williams*, 2004 WI App 56, ¶¶ 29–31 & n.3, 270 Wis. 2d 761, 677 N.W.2d 691. The circuit court was cognizant of the prosecutor's inability to adequately counter the effects of defense counsel's opening statement during his closing, given the nature of the statement and the defendant's invocation of his Fifth Amendment rights. Therefore, the circuit court concluded that a manifest necessity justified a mistrial.

> Defense counsel aired improper and highly prejudicial evidence before the jury, the possible impact of which the trial judge was in the best position to assess. The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial.

*Washington,* 434 U.S. at 514–16.

¶ 86. Despite the fact that the circuit court *could have* issued a curative instruction informing the jury that statements of counsel are not evidence, I would not second-guess the decision of the circuit court to not do so. Here, defense counsel did not simply allude to the testimony of a minor witness who never testified; he presented the entire defense theory of the case to the jury without actually presenting any evidence. A curative instruction may be appropriate in some cases to remedy the effects of an improper comment during opening statements. In this case, however, there is no possible way a curative instruction would have sufficed

311

to remove the prejudice from the jury, given the nature and extensiveness of defense counsel's reference to the defendant's prior testimony and the prosecutor's inability to comment on the defendant's refusal to testify.

¶ 87. This case involves an allegation of a sexual assault of one man by another. Defense counsel informed the jury that the defendant was a family man with children and a stable job as a construction worker. He repeatedly referred to the testimony his client had previously provided. He discussed at length the defendant's version of the events the night in question. He discussed in detail how the defendant and victim allegedly met, as well as their subsequent activities, which included a sale of drugs at the defendant's apartment and a disagreement over money. Defense counsel instructed the jurors: "Remember, Rich says he pushes him out. He kicks him out of the building." Defense counsel repeatedly referred to the defendant's version of events as "the only story that's been consistent throughout this case." The *only* witness that was to substantiate this story was the defendant himself. Yet, the defendant never testified and, consequently, none of these supposed facts were ever presented to the jury.

¶ 88. While it may be possible to effectively inform a jury to disregard a minor statement or small piece of inappropriately admitted evidence, *State v. Collier*, 220 Wis. 2d 825, 838, 584 N.W.2d 689 (Ct. App. 1998), instructing a jury to ignore the entire opening statement of defense counsel when the defense never puts on a case in chief is like asking a person to not think of the proverbial pink elephant. As the circuit court explained, it was not sufficient to simply provide a curative instruction to the jury in this case because "[t]hey have a reasonable alternative in their minds now before them with no evidence."

¶ 89. When an appellate court reviews a circuit court decision to grant a mistrial, the circuit court's failure to consider a curative instruction is relevant only if such an instruction was available *and* practical. *See id.* at 837–38. Further, it is not the failure to provide a curative instruction that renders a mistrial an erroneous exercise of discretion; rather, it is the circuit court's failure to give reasoned consideration to the possibility of a curative instruction. *Williams,* 270 Wis. 2d 761, ¶ 31 n.3.

¶ 90. If the facts of record reflect the uncertain utility and effectiveness of a curative instruction, this court has all the more reason to defer to the circuit court's ultimate decision on whether to grant a mistrial:

> [The trial judge] is the judge most familiar with the evidence and the background of the case on trial. He [or she] has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he [or she] is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Id.,* ¶ 27 (quoting *Washington,* 434 U.S. at 514)(first alteration added).

¶ 91. Moreover, I disagree with the majority's assertion that "[t]he circuit court erred as a matter of law in the instant case by concluding that the prosecuting attorney could not effectively countermand defense counsel's opening statement." Majority op., ¶ 77. The majority suggests that the prosecuting attorney had some leeway in commenting on the defendant's refusal to testify in light of defense counsel's opening statement and that the ability of the prosecutor to so comment is not susceptible to bright line rules. Majority op., ¶ 74. However, I doubt that the State would receive the benefit of such latitude and uncertainty had it in fact

313

chosen that course and the case was before the court on that very issue. *See* majority op., ¶ 77 n.47 ("The State argues that with a curative instruction the State risked a reversal for violation of the defendant's Fifth Amendment privilege against self-incrimination. Perhaps, but a reversal would enable the State to bring yet another prosecution."). Therefore, I would affirm the circuit court's decision to grant a mistrial in this case.

¶ 92. Finally, I wish to express my concern that the majority opinion opens the door to gamesmanship by unscrupulous and savvy defendants who, after assuring their counsel that they will testify, invoke their Fifth Amendment rights following counsel's full presentation of their version of events to the jury. This court should not condone such sandbagging tactics. As the circuit court aptly stated, if defense counsel is unsure that his client is willing to testify at the time of opening statement, then he should wait until the end of the State's case to make his opening statement.

¶ 93. I am authorized to state that Justice DAVID T. PROSSER joins this opinion.

¶ 94. DAVID T. PROSSER, J. (*dissenting*). The supreme court is a law-defining, law-developing court. *Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (citing *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1983)). In this capacity it is expected to address "real and significant" questions of federal and state constitutional law. Wis. Stat. § (Rule) 809.62(1)(a) (2003–04).[1] But the court acts only to resolve actual controversies. It was not designed to announce principles of law beyond the

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

314

facts of a particular case or to render advisory opinions. *State v. Robertson,* 2003 WI App 84, ¶ 32, 263 Wis. 2d 349, 661 N.W.2d 105 (citing *State ex rel. Ellenburg v. Gagnon,* 76 Wis. 2d 532, 535, 251 N.W.2d 773 (1977)); *State v. Witkowski,* 163 Wis. 2d 985, 988, 473 N.W.2d 512 (Ct. App. 1991). Thus, the court's legal pronouncements must be tied to the facts in a case as they are, not as the court might like them to be.

¶ 95. The present case is extremely troubling because the court appears more interested in announcing principles of constitutional law than in wrestling with inconvenient facts. As a result, the court ends up making unsupported assumptions, misconstruing facts, ignoring ugly realities, denigrating the work of honorable people, and ultimately reaching a flawed conclusion. For all these reasons, I respectfully dissent.

## FACTUAL BACKGROUND

¶ 96. This case involves an alleged series of sexual assaults by Richard A. Moeck, then 49, against C.S., a 23–year-old male, in the early morning hours of August 2, 1997. C.S. claimed that Moeck induced him to come up to Moeck's apartment for a drink and then threatened to kill him with a 12–inch knife if he did not disrobe and submit to multiple degrading assaults. C.S. asserted that he was held hostage for more than four hours and was threatened, slapped, repeatedly assaulted, and robbed.

¶ 97. Moeck was charged with a number of offenses, including two counts of first-degree sexual assault, one count of false imprisonment, one count of robbery, and one count of intimidation of a witness.

¶ 98. The case has been tried four times. The first trial in January 1998 ended in a hung jury. The second

trial in March 1998 resulted in conviction on five counts. These convictions were subsequently reversed by the court of appeals.

¶ 99. The third trial in March 2000 is the subject of this review. As the majority correctly states, the circuit court granted the State's motion for mistrial at the close of the evidence. Majority op., ¶ 9. The fourth trial in November 2000 again resulted in conviction of the defendant on five counts.

¶ 100. Moeck had a long criminal history dating back to 1960. He had numerous convictions including felonies. Some of his prior offenses had similarity to the alleged offenses against C.S. Thus, when Moeck testified in his own defense, he was subject to cross-examination and devastating impeachment.

¶ 101. Moeck testified at the first trial and acknowledged in direct examination that he had been convicted of a crime six times. The prosecutor did not refer to this admission in her cross-examination or her closing argument. This is the trial that ended in a hung jury.

¶ 102. Moeck also testified at his second trial. Again he acknowledged in direct examination that he had been convicted of six crimes and also admitted that he had been less than truthful to a law enforcement officer during an incident in Green County. At this second trial, the prosecutor emphasized both of Moeck's admissions in cross-examination and in her closing argument. In her closing, she said: "When you talk about a motive to lie, well, the defendant has been convicted of six crimes in the past and he also has admitted that he has given false information to police in the past."

¶ 103. By the time of the third trial, the State had accumulated more damaging information about Moeck

through a presentence investigation (PSI).[2] For example, District Attorney Scott Horne used information from the PSI at the sentencing hearing after the second trial. He told the court that in one incident in Florida, Moeck had "assaulted a victim with a weapon, took his wallet and tied him to a tree." In another incident in Illinois in 1993, Moeck invaded a home "while masked, slapped a woman, ultimately stabbed her in the hand and leg." Moeck had threatened a range of people, from his former wife to police officers and court personnel.

¶ 104. The case against Moeck was complicated by the fact that C.S. also had criminal convictions (five at the time of the third trial) as well as some inconsistencies in his prior testimony. Thus, the pivotal issue for the jury was the credibility of the victim versus the credibility of the defendant. Moeck's attorney at the third trial, Timothy Gaskell, acknowledged as much when he wrote: "The thrust of the case has always been whether the alleged victim . . . is a credible witness."

¶ 105. These dynamics were fully understood by the defendant, his attorney, the prosecutor, and the court at the opening of the third trial. Attorney Gaskell,

---

[2] This character evidence would not normally be admissible to prove conduct in conformance therewith. Wis. Stat. § 904.04(2). However, when the defendant chooses to place his character in issue, the defendant "opens the door" to rebuttal evidence about his character. Wis. Stat. § 904.04(1)(a); *State v. Pulizzano,* 155 Wis. 2d 633, 658, 456 N.W.2d 325 (1990); 7 Blinka *Wisconsin Practice: Wisconsin Evidence* § 404.4 at 133 (2d ed. 2001). Defense counsel effectively put Moeck's character in issue during his opening argument by referring to Moeck's children and the length of time Moeck had been married. Professor Blinka uses this precise example (the defendant's status as a "family man") as a situation in which the prosecution might be allowed to introduce responsive character evidence. *Id.*

who replaced Attorney Fabio Burgos after Moeck fired him, gave an opening statement in which he presented the defendant's entire account of events, but then offered no evidence to support his story. The defendant did not testify, as he had before, and thereby escaped the cross-examination and impeachment he had faced in the first two trials. Gaskell also stressed in his opening that C.S. had been inconsistent in his prior testimony but that Moeck's account had not varied when he testified.

¶ 106. The court granted the State's motion for a mistrial after the defendant failed to produce evidence to corroborate the opening statement and after the State contended that it could not neutralize the prejudice it had suffered by cautionary instructions and closing argument. This discretionary decision by the circuit court was twice affirmed by the court of appeals, before it was reversed.

¶ 107. The legal issues now before the court cannot be separated from these background facts. The circuit court had a complete grasp of these background facts and was aware from personal observation that the defendant's personality changed dramatically when the jury was not present.[3]

## LAW OF THE CASE

¶ 108. The first issue concerns the law of the case doctrine. The majority explains that the law of the case doctrine is a "longstanding rule that a decision on a

---

[3] For instance, the court removed the defendant from the courtroom because of his shouting and disruption during a sentencing hearing. In *Arizona v. Washington*, 434 U.S. 497, 513–14 (1978), the Court noted that the trial judge "is the judge most familiar with the evidence and the background of the case on trial."

legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." Majority op., ¶ 18 (quoting *Univest Corp. v. Gen. Split Corp.,* 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989)). Nevertheless, the law of the case doctrine is not an absolute rule. Majority op., ¶ 25. It can be set aside in the interests of justice "whenever cogent, substantial, and proper reasons exist." *McGovern v. Eckhart,* 200 Wis. 64, 75, 78, 227 N.W. 300 (1929).

¶ 109. The majority opinion conveys the impression that the court of appeals considered this issue only once prior to its decision in the present appeal. Majority op., ¶¶ 26–28. In reality, though, the court of appeals *twice* affirmed La Crosse County Circuit Judge Dennis Montabon's decision to grant the State a mistrial in Moeck's third trial. The court of appeals initially considered Moeck's argument in September 2000 when, shortly before the fourth trial, the defendant moved to dismiss the case on double jeopardy grounds. When his motion was denied by Judge Montabon, the defendant sought an appeal of the court's nonfinal order. Majority op., ¶ 11.

¶ 110. In his petition to the court of appeals, Attorney Gaskell attached several documents. The documents included a 3–page excerpt of his opening statement *and the complete 11–page transcript of the instructions conference.* This short transcript contained the entire discussion of the State's motion for mistrial.

¶ 111. In this appeal, Assistant Attorney General James M. Freimuth repeatedly referred to the discussion at the instructions conference and cited pages from the defendant's petition and attached documents. Freimuth concluded, on page 18 of his Response to Petition For Leave to Appeal, that *"the excerpt of the record*

319

*provided by defendant in the present case* fully supports the trial court's exercise of discretion in granting the State's motion for mistrial based on defense misconduct." (Emphasis added.)

¶ 112. Upon reviewing these papers, a court of appeals panel consisting of Judges Charles Dykman, William Eich, and Patience Roggensack entered a summary order affirming the circuit court. The order read in part:

> [B]ased on our review of the petition *and the attached documents,* we conclude that the State's . . . proposal of granting leave to appeal and summarily affirming would best serve the interest of judicial economy. We further conclude that the trial court's memorandum decision and order identifies and applies the proper legal standards to the relevant facts and reaches the correct conclusion. (Emphasis added; citation omitted.)

The court of appeals then attached the circuit court's written decision to its order.

¶ 113. The court of appeals reviewed the same issue again in June 2002. After his conviction at the fourth trial, the defendant filed a petition for a writ of habeas corpus in the court of appeals. The petition challenged the effectiveness of Moeck's counsel in the earlier pretrial interlocutory appeal. Majority op., ¶ 13. Once again, the defendant's papers included the complete transcript of the instructions conference.

¶ 114. A panel consisting of Judges Dykman, Roggensack, and Paul Lundsten entered an order denying the writ. The order read in part:

> Moeck petitioned for leave to appeal from the trial court's order permitting a retrial and denying his motion to dismiss the charges, claiming double jeopardy. We granted the petition . . . but summarily affirmed the trial court's ruling on double jeopardy.

320

. . . .

In Moeck's present petition he contends that had appellate counsel adequately argued the issue [on the interlocutory appeal], he would have prevailed . . . . The trial court's decision to allow a retrial was discretionary. *This court will summarily affirm an exercise of discretion only if the record is clear that the discretion was properly exercised. See Wisconsin Court of Appeals Internal Operating Procedures, Section VI, Sub. 1.* In short, no amount of advocacy would have convinced this court that the trial court unreasonably exercised its discretion. It was clear that the court did not.[4] (Emphasis added.)

¶ 115. Moeck then pursued a direct appeal of his conviction and the denial of his post-conviction motion for relief, raising the same double jeopardy issue that the court had decided previously. In this third "appeal," the panel consisted of Judges Dykman, Margaret Vergeront, and Paul Higginbotham. In its opinion reversing Moeck's conviction on double jeopardy grounds, the court stated:

Prior to his fourth trial, Moeck moved to dismiss the complaint on double jeopardy grounds. The trial court denied the motion in a written opinion. Moeck petitioned this court for leave to appeal. We granted the petition and summarily affirmed, reasoning that the trial court's written opinion "applie[d] the proper legal standard to the relevant facts and reache[d] the correct conclusion." *However, we failed to review the transcript showing the trial court's reasoning when it granted the State's request for a mistrial.*

---

[4] Moeck petitioned for review in this court, but his petition was denied on September 26, 2002. This petition also contained the relevant transcript.

*State v. Moeck,* 2004 WI App 47, ¶ 6, 270 Wis. 2d 729, 677 N.W.2d 648 (emphasis added). The court of appeals added:

*When we reviewed Moeck's petition for review, we examined Judge Montabon's written order and not his oral decision on the State's motion for a mistrial.* Though the two are similar in some respects, the oral decision makes clear that the trial court left the mistrial decision up to the State. The trial court would have given a curative instruction had the State requested that instead of a mistrial. And the court reasoned that the defense counsel's failure to produce evidence promised in opening statement necessitated a mistrial. *Had we reviewed the transcript, we would have observed this.*

*Id.,* ¶ 21 (emphasis added).

¶ 116. The court's assertion that it did not examine the transcript of the circuit court's oral decision in the first appeal in 2000 is extraordinary. It is an assertion about what Judge Dykman, Judge Eich, and Judge Roggensack considered in reviewing Moeck's interlocutory appeal.

¶ 117. Although the judge who wrote the decision was admittedly a member of all three panels, he was not empowered to write about what Judge Eich and Judge Roggensack thought and considered four years earlier. The other two members of the third panel were not involved in the earlier cases.

¶ 118. There is absolutely no evidence that either Judge Eich or Judge Roggensack has ever confirmed the court's statement that they never considered the short transcript that was before them. The court's 2000 order contradicts the court's 2004 statement because it asserts that the court reviewed the defendant's "petition and attached documents."

¶ 119. Moving to this court, the majority opinion states that the cogent, substantial, and proper reason for disregarding the law of the case doctrine is that "[t]he court of appeals had based its prior decisions that the circuit court properly exercised its discretion only on the circuit court's written order." Majority op., ¶ 27. The texts of the two court of appeals orders demonstrate that this is not correct. The majority goes on: "The court of appeals candidly acknowledged . . . that its prior summary order rejecting the defendant's double jeopardy challenges erroneously failed to take into account the circuit court's oral decision to grant a mistrial." *Id.* Again the majority is not correct. The court of appeals did not make any such representation about its second order.

¶ 120. It is astonishing for this court to assert that Judge Roggensack (twice), Judge Eich, and Judge Lundsten never considered a short transcript that was central to the issue in front of them before they made their decisions, particularly when the court of appeals' summary orders state otherwise and the defendant attached the relevant document to his filings on both occasions. Judge Roggensack should have had an interest in the case because she wrote the opinion reversing Moeck's convictions in the second trial for failure to grant *his* request for a mistrial.

¶ 121. By affirming the court of appeals, this court is ratifying a dangerous new procedure in which one judge's subjective memory of a transaction that occurred four years earlier is permitted to override the plain language of a contemporary court order. For us to conclude that this questionable procedure constitutes a cogent, substantial, and proper reason for setting aside

the law of the case is nothing less than a lethal blow to finality in our courts.[5]

¶ 122. The court of appeals gave an additional reason for disregarding the law of the case doctrine, namely, that "the oral decision makes clear that the trial court left the mistrial decision up to the State." *Moeck,* 270 Wis. 2d 729, ¶ 21. "The record shows that the trial court allowed the State to determine whether there was manifest necessity to terminate the third trial. Such discretion resides only with the judiciary." *Id.,* ¶ 13.

¶ 123. My reading of the transcript is very different. The third jury trial was conducted on March 15, 2000. Evidence in that trial concluded about 5:30 p.m. Thereafter, the court excused the jury and met in the courtroom with Assistant District Attorney Robyn Matousek, defense attorney Gaskell, and the defendant. In this meeting, the defendant confirmed that he did not wish to testify, and defense counsel requested and was granted an instruction that the defendant had an absolute constitutional right not to testify. This discussion was followed by a short recess.

¶ 124. When the parties returned, the court furnished copies of proposed instructions. The State requested an additional instruction to deal with defense counsel's opening statement. The prosecutor complained vehemently that defense counsel "went through the whole scenario" [of the defendant's account] in his opening statement, including an assertion that the defendant had testified at the previous trials, then failed to present any evidence to corroborate what he had said. "[S]o I think that's completely unethical," the prosecutor argued, "but aside from that, I think that

---

[5] The majority never satisfactorily explains why the second court of appeals order should be disregarded.

there has to be an instruction to the jury that they are to disregard that and not consider any of that portion of the opening statement."

¶ 125. Attorney Gaskell insisted that opening statements are not evidence, and that he had a right to tell a jury what he believed a defendant would say without losing the constitutional right not to put that defendant on the stand.

¶ 126. Judge Montabon disagreed. "You can't tell the jury what the evidence is gonna show and then don't show it," he said. Moments later, the court added: "[I]t seems to me the State is in a bind . . . and might well be entitled to a mistrial.[6] This is the instruction I propose to try to correct that, but the State is gonna be in a bind in argument because they can't directly comment on the defendant not testifying." Judge Montabon then suggested the following instruction: "The jury is not to consider any statement of certain facts made in opening statements when such facts were not supported by evidence received during the course of this trial."

¶ 127. The prosecutor immediately responded: "Can I have about five minutes? I would like to confer with [District Attorney] Horne about whether or not I should be asking for a mistrial in this case." Matousek took the judge's proposed instruction with her.

¶ 128. When she returned, Matousek explained that she met with C.S. to determine whether he was willing to go through a fourth trial. He was. "I need to make clear, though, before I make [a] decision to request a mistrial . . . exactly how far would the Court be allowing me to go as far as statements in a closing

---

[6] In *State v. Copening,* 100 Wis. 2d 700, 709, 303 N.W.2d 821 (1981), the court observed: "[I]t is not infrequent that a trial court discerns *sua sponte* the necessity for a mistrial."

argument commenting on . . . basically a fictional tale presented in the opening statement . . . and no evidence presented and no effort to present evidence to support that?" She emphasized that she had "every intention" of not being very kind to Attorney Gaskell. "I think I should have the opportunity to . . . at least make [the] statement, that a fictional tale was presented . . . . He's basically slinging mud at a victim without any effort to support his statements."

¶ 129. Gaskell fought back. "Opening statements are not evidence . . . . If we actually in any way, shape, or form believe that the jury is gonna hang their hat on something that I said ten hours ago, I think that's an absurd notion. *They're gonna base it on whether they believe [C.S.] or not.*" (Emphasis added.)

¶ 130. The court replied: "It's not quite that simple, Mr. Gaskell. They [the jury] have a reasonable alternative in their minds . . . with no evidence whatsoever to support it. Reasonable or not, they have an alternative."

¶ 131. "I haven't had a chance to do any cross-examination," the prosecutor complained. "I can't include that in . . . any part of my closing argument as I have in the past two trials."

¶ 132. In further discussion, the court opined that the prosecutor could say there was no proof of what defense counsel had said "as long as you don't say . . . the defendant didn't get up here and tell us that, or words to that effect . . . [I]f you say, the defendant didn't get up here and say this, we will likely be trying it again."

¶ 133. The court added: "I read about [attorney] misconduct [in] opening statements. It's clear[,] I think[,] that the Court can grant a mistrial."

¶ 134. Attorney Gaskell then appeared to compromise:

> Mr. Gaskell: I think if Ms. Matousek — if she wants to argue . . . that we didn't present any supporting evidence based on my opening statement, I mean, to move this thing along —
>
> Ms. Matousek: Are you waiving any objection to that?
>
> The Defendant: No.
>
> Mr. Gaskell: As long as —
>
> The Defendant: No. Nope.
>
> Mr. Gaskell: Well, Your Honor, I think you're right, as long as she doesn't say, the defendant didn't get up on the stand and say that — I mean, I think she can say that I indicated that in opening statement and that I didn't present any testimony to back that up or evidence to back that up.

¶ 135. At this point, the record shows open conflict between the defense counsel and the defendant. The defense counsel appears to be making a concession that the defendant is unwilling to make.

> The Court: [to the prosecutor] Do you want to go ahead or not? . . . [T]he State under the circumstances now would be entitled to a mistrial if they wanted one.
>
> Ms. Matousek: I think I'm gonna ask for a mistrial, Judge. I'm not gonna be able to erase those facts. I can't argue them . . . in

> my oral argument because I didn't have
> a chance to cross-examine [the defen-
> dant] about it. It's not even out there
> before the jury.
>
> . . . .

The Court: Motion for a mistrial is granted.

¶ 136. The transcript shows that the court several times suggested that the State was entitled to a mistrial if the State wanted one. Against this background, the question was whether the State wanted a mistrial or whether it wanted to proceed. Although the State took the position that it had been prejudiced, it unquestionably retained the option whether to go forward or seek a new trial. As a result, it was meaningless for the court of appeals to conclude that "the trial court left the mistrial decision up to the State." *Moeck,* 270 Wis. 2d 729, ¶ 21. Surely, this court is not holding that when the State has been prejudiced, the court may declare a mistrial even though the State does not want one.

¶ 137. The court of appeals also said that "the trial court allowed the State to determine whether there was manifest necessity to terminate the third trial." *Id.,* ¶ 13. That *would* be meaningful, but that conclusion is not supported by the record. The State gave reasons why it wanted a mistrial and the court granted the mistrial.

¶ 138. Whether the court made the correct ruling is a different question from whether the court abdicated its discretion to the prosecutor. Two court of appeals decisions concluded that Judge Montabon made the correct decision in granting the State's motion for a mistrial. I see no cogent, substantial, and proper reason *based on facts* why the court of appeals' prior rulings should not be considered the law of the case. The circuit

court did not abdicate its discretion; it recognized that the State had options and permitted the State to select an option.

## MANIFEST NECESSITY

¶ 139. The majority's decision to disregard the law of the case doctrine makes it necessary to address the second issue, whether the fourth trial violated the defendant's right against double jeopardy because no "manifest necessity" for a mistrial existed after the close of evidence in the third trial. The majority concludes that the State did not meet its burden of showing a "manifest necessity" for terminating the third trial, and, thus, the circuit court erred in granting a mistrial. Majority op., ¶ 80.

¶ 140. Justice Wilcox has authored a powerful dissent, which I join, but there are additional details about the evidence and the majority's opinion that deserve comment.

¶ 141. This case involves a vulnerable victim. At the time of the third trial, C.S. had five criminal convictions and a pattern of making misstatements to law enforcement. His checkered history fully justified a challenge to his credibility, but it did not excuse assaults on his person. The prosecutor acknowledged these problems in her opening statement, and explained that C.S. had to relive the incident in several different testimonies.

¶ 142. The defendant's opening statement was 17 pages in length. As the majority accurately states, the State did not object to the defendant's version of events because it was consistent with Moeck's prior testimony. The State would likely have objected to the substance of the story had it known the defendant would offer no

329

evidence to support his narrative. The State's three objections actually reinforced the defendant's story because each one focused on the argumentative nature of counsel's remarks, not the substance of his allegations. The court responded to the objections with comments such as "Tell them what your evidence will show" and "You will have ample opportunity to argue."

¶ 143. The defendant's opening statement told the jury that "the evidence is gonna be significantly different" from the events described in the State's opening, and "here are some of the things that are gonna be significantly different."

¶ 144. Shortly thereafter, defense counsel stated that "[C.S.] has testified . . . at previous hearings in this matter. *Rich has done the same thing,* and the only person in this case that has been consistent with their story *and with their testimony* is Rich." (Emphasis added.)

¶ 145. This comment distinguishes the present case from most others in which defense counsel makes an improper opening. The State could not dispute the fact that Moeck had testified twice before. This fact, once revealed, was reinforced by every reference to previous trials. It could not be erased by a cautionary instruction and could not be discussed in the prosecutor's closing argument without reminding the jury that the defendant had not testified at this trial. Thus, when the defense attorney relayed Moeck's version of the encounter with C.S., it had much greater credibility than it would have had in an opening at a first trial.

¶ 146. Attorney Gaskell also volunteered that Moeck is "a 250–pound construction worker. He's been married twice before. He's got three children and those

marriages lasted approximately 17 years."[7] Moments later he skillfully contrasted this uncontested information with the statement that, "You're not gonna hear any evidence in regards to any kind of homosexual activity or any homosexual materials that were either found in Rich's apartment or nobody else is gonna come up here and say, 'yeah . . . Rich Moeck's a homosexual.' There's . . . gonna be no evidence in regards to that."

¶ 147. Attorney Gaskell's prediction proved to be correct. Because he was familiar with the first two trials, Gaskell was able to effectively demolish a straw man (which the jury would have noted), present the defendant's story of the incident, *and* avoid any cross-examination or impeachment of the defendant.

¶ 148. When Gaskell repeatedly argued that "the only person in this case that has been consistent with their story and with their testimony is Rich," however, he was not being completely candid. One example illustrates the point.

¶ 149. At the first trial, Moeck contended that he met C.S. at Kenny's Pub, a tavern in La Crosse, that he and C.S. were drinking at the bar, that C.S. asked Moeck if he wanted to go outside in the back of the tavern and smoke a joint. They did, according to the story, and Moeck told C.S. that he might want to buy some pot once in a while. "After we got to talking, I told him where I lived and that's how he knew where I lived." Moeck provided this background as his explanation for how and why C.S. knocked on his apartment door at 3:09 on a Saturday morning.

---

[7] This evidence could easily be seen as character evidence. *See supra* n.2. Because Moeck did not actually testify, the State had no opportunity to rebut this "evidence," further justifying the court's decision to grant a mistrial.

¶ 150. On cross-examination, the prosecutor attacked the plausibility of this story and obtained a concession that C.S. did not write down Moeck's address. Moeck also said he lived in one of several apartments above Spanky's Tavern. In closing argument, the prosecutor declared:

[Y]ou hear from the defendant that he had met [C.S.] about a month before, [had a conversation with him] in a bar . . . told him that he lived up above Spanky's and a month later after having no other contact with him, [C.S.] comes to the defendant's apartment. *How [C.S.] knew which apartment it was when there are four or five different apartments on that particular floor is beyond me.* Maybe he went knocking at all different ones at 3 in the morning, but *I think it's pretty farfetched to believe that [C.S.] knew exactly which apartment to go to to try to sell this marijuana to the defendant.* [C.S.] didn't even remember exactly what apartment number it was when he testified on the stand. . . . [W]e're to believe that [C.S.] was able to remember, not only that but he was able to remember and locate the defendant after having had two hits of LSD and so he's supposed to be able to find his way to an apartment that he's never been to. (Emphasis added.)

¶ 151. In the second trial, Moeck headed off part of this attack on his credibility by "remembering" new facts:

Q: And when you described where you lived, how did you put that to him?

A: Well, I told him what door to go in. He knew where Spanky's was, so I told him what door to go in, right next door to Spanky's, and to go up to the first floor *and my apartment was the last one on the left.* (Emphasis added.)

332

¶ 152. On cross-examination, he volunteered this information:

Q: Did you see [C.S.] write down the information about where you lived?

A: No, but I told him how to get to my apartment.

¶ 153. If the defendant had been subject to cross-examination, the implausibility and inconsistency in his testimony would have been exposed. That, of course, never happened. Instead, Attorney Gaskell was able to spend 13 pages of his opening statement on discrepancies and inconsistencies in the victim's testimony and then followed that up with vigorous cross-examination of the victim at trial.

¶ 154. Attacking the credibility of a victim's testimony is a legitimate trial tactic. Telling the defendant's side of the story in an opening statement, then failing to corroborate a word of that story with testimony is not legitimate, especially when the story escapes all adversary challenge at trial.

¶ 155. The "central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986). "To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another." *United States v. Robinson,* 485 U.S. 25, 33 (1988).

¶ 156. These principles were foreshadowed in *Arizona v. Washington,* 434 U.S. 497 (1978), a case involving an improper opening statement by defense counsel. *Washington* is discussed extensively by the majority and the dissent of Justice Wilcox. However, the majority opinion downplays the deference the *Washington* Court said ought to be given to a circuit court's exercise of

discretion in granting a mistrial in these circumstances. The *Washington* Court said:

> [T]he trial judge ordered a mistrial because the defendant's lawyer made improper and prejudicial remarks during his opening statement to the jury.
>
> . . . .
>
> We recognize that the extent of the possible bias [affecting the impartiality of the jury] cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord *the highest degree of respect* to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.
>
> . . . .
>
> An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. . . . [This] action[ ], however, will not necessarily remove the risk of bias that may be created by improper argument. . . . [T]he trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred. *The adoption of a stringent standard of*

334

> *appellate review in this area . . . would seriously impede the trial judge in the proper performance of his "duty,* in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct" (citing *United States v. Dinitz,* 424 U.S. 600, 612 (1976)).

*Washington,* 434 U.S. at 510–513 (emphasis added).

¶ 157. The Court acknowledged that a trial judge was required to exercise sound discretion in declaring a mistrial, *id.* at 514, but Justice Stevens, writing for the Court, indicated that this meant not acting "irrationally or irresponsibly," as opposed to going through a long checklist of inquiries and alternatives as the prerequisite for establishing sound discretion. *Id.* "Neither party has a right to have his case decided by a jury which may be tainted by bias." *Id.* at 516. "The state trial judge's mistrial declaration is not subject to collateral attack . . . simply because he failed to find 'manifest necessity' *in those words or to articulate on the record all the factors* which informed the deliberate exercise of his discretion." *Id.* at 517 (emphasis added).

¶ 158. The majority appears to interpret *State v. Seefeldt,* 2003 WI 47, 261 Wis. 2d 383, 661 N.W.2d 822, as creating a checklist for establishing sound discretion and a stringent standard of review. This is unwarranted. *Seefeldt* was decided on less egregious facts than the present case, in circumstances more amenable to corrective action and cautionary instruction. *Seefeldt* was also grounded in *Washington* and *State v. Barthels,* 174 Wis. 2d 173, 184, 495 N.W.2d 341 (1993). It should not be reinterpreted here to establish new requirements that did not exist five years ago.

¶ 159. In *Washington,* the Court started with the premise that defense counsel's comment in the opening statement was not proper. *Washington,* 434 U.S. at 511.

335

By contrast, the majority in the present case starts with the proposition that the opening statement was proper when delivered. To support this proposition, the majority makes the following statements:

1. "The defendant's decision not to testify was *apparently* made at the close of the State's evidence." Majority op., ¶ 49 (emphasis added).

2. "The defendant and his counsel *apparently* were confident that the State had failed to meet its burden of proof." *Id.* (emphasis added).

3. "*As a result,* the defendant did not present any evidence to substantiate defense counsel's opening statement of the defendant's version of the events." *Id.* (emphasis added).

4. "Defense counsel explained that he could not know when making his opening statement that the defendant would opt not to testify, especially given that the defendant had testified at two earlier trials conducted by another defense attorney." *Id.,* ¶ 51.

5. "Defense counsel asserted that he expected the defendant to testify (as the defendant had in prior trials), but he did not know in fact whether the defendant would testify." *Id.,* ¶ 65.

¶ 160. The problem with these statements is that the first three are pure speculation and the last two are not substantiated by the record. At no point in the instructions conference did defense counsel make a statement that he expected the defendant to testify. In fact, at no point in his 17–page opening statement did counsel say words such as "Rich Moeck will testify that . . . ," whereas he did make such statements about C.S. and about a La Crosse police officer. The defendant's opening statement is so carefully con-

structed and so detailed in its recitation of the victim's inconsistencies that it is hard to imagine that defense counsel was oblivious to whether the defendant would testify. When counsel was accused to his face by the prosecutor of being unethical, he answered with generalities, not specifics.

¶ 161. If defense counsel actually expected the defendant to testify, he may have been misled by the defendant himself. The defendant spoke up personally when the prosecutor asked if the defense was waiving any objection to a pointed closing argument about the failure of the defense to produce evidence.

Ms. Matousek: Are you waiving any objection to that?

The Defendant: No.

Mr. Gaskell: As long as —

The defendant. No. Nope.

¶ 162. This blunt exchange is reminiscent of a colloquy that occurred at a sentencing hearing after the second trial when the defendant fired his first attorney:

The Court: You don't wish to have Mr. Burgos represent you?

The Defendant: Nope.

The Court: Do you want another lawyer —

The Defendant: Nope.

The Court: — to represent you?

The Defendant: Nope.

¶ 163. Shortly thereafter, the defendant attempted to prevent the district attorney from speaking. "Nope, he can't say nothing. He ain't got nothing to say."

Eventually, the court removed the defendant from the courtroom for vulgarity, shouting, and disruption.[8]

¶ 164. Thus, there is good reason to dispute the majority's position that the defendant's opening statement was proper when it was delivered.[9] The State persuasively argues that the defendant's opening was "a textbook example of how not to present an opening statement to the jury." It quotes the late Chief Justice Warren Burger that:

> An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict.

*United States v. Dinitz,* 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).

---

[8] At one point, the defendant said: "Yeah, I'm not going to sit here and listen to the State's bullshit so just take me out."

[9] The majority appears to draw a distinction between an opening statement that is proper when delivered and an opening statement that is made in bad faith. In this case, the defendant's opening statement was prejudicial to the State irrespective of whether it was delivered in bad faith. It was not less prejudicial because it was arguably proper when delivered. In light of the defendant's failure to testify, the opening statement inflicted the same irreparable damage on the State's case regardless of when it became clear that the statement was impermissible.

¶ 165. There is real danger that the court is rewriting the rules of what is acceptable comment in an opening statement and how a trial judge may respond to counsel error. The majority concludes that "the circuit court did not exercise sound discretion in declaring a mistrial when it failed to give adequate consideration to the State's ability to refer to the defendant's silence and to the effectiveness of a curative jury instruction." Majority op., ¶ 71. It asserts that the circuit court's belief that a response in closing argument and a curative jury instruction would not rectify the prejudice to the state was "unfounded." *Id.*

¶ 166. Taking these points in reverse order, the court suggests that "a curative jury instruction that opening and closing statements are arguments, not evidence, would have cured any possible prejudice resulting from defense counsel's opening statement." *Id.,* ¶ 79. This determination seriously miscalculates the extraordinary circumstances of this case.

¶ 167. The notion of a cautionary instruction must be put in context. Before the State and defense counsel gave opening statements in this case, the court addressed the jury, saying:

> The State must prove every fact necessary to find the defendant guilty. The State must prove those facts through evidence. There are two kinds of evidence. First, there is what the witnesses say on the witness stand. Second, there are exhibits which are received into evidence. *The arguments of the lawyers are not evidence.*
>
> . . . .
>
> In considering your verdict, *disregard everything except the evidence received during this trial* and the law contained in my instructions. (Emphasis added.)

¶ 168. At the close of some trials, the court gives Wis JI—Criminal 157, "Remarks of Counsel" which reads in part: "Remarks of the attorneys are not evidence. If the remarks suggested certain facts not in evidence, disregard the suggestion." Attorney Gaskell argued that this instruction was the correct instruction to give the jury.

¶ 169. There is presently a jury instruction on "Opening Statements," Wis JI—Criminal 101, which reads: "The lawyers will now make opening statements. The purpose of an opening statement is to give the lawyers an opportunity to tell you what they expect the evidence will show so that you will better understand the evidence as it is introduced during the trial. I must caution you, however, that the opening statements are not evidence." This instruction was not given before opening argument. The instruction did not read the same way in March 2000, and an earlier version may not have been available to the court because it was relatively new.

¶ 170. As noted above, the court proposed an instruction that read: "The jury is not to consider any statement of certain facts made in opening statements when such facts were not supported by evidence received during the course of this trial." This was the only proposed instruction under consideration in the conference that went beyond Wis JI—Criminal 157.

¶ 171. The truth is, this instruction would not have undone the damage of defense counsel's opening statement. First, as worded, it applied to both the defense and the State. Second, it was not materially different from the boilerplate instructions cited above. Third, it was highly unlikely to erase the jury's understanding that the defendant had been married, had three children, had testified before, and had a story that

340

conflicted with the victim's story. As the circuit court patiently explained, the jury had a "reasonable alternative in their minds." Consequently, I do not see how any court could conclude that the circuit judge was acting irrationally or irresponsibly in believing that this cautionary instruction would not solve the problem.

¶ 172. The suggestion of a "measured response" in the State's closing argument is also problematic. The court mysteriously pronounces that "[t]here are circumstances . . . when an accused 'opens the door' to a measured response by the prosecuting attorney [and t]he defendant opened the door in the instant case." Majority op., ¶ 74. However, the majority provides no guidance for future cases as to when that "door" opens, or what a similarly situated prosecutor could permissibly say during her closing argument.[10] In fact, the State could not have pointed to any explicit language in the defendant's opening statement in which defense counsel promised that the defendant would testify. Instead, the court hints at the possibility of a response on the defendant's silence, then pulls back with the observation that the propriety of prosecutorial comment must be decided "case by case." *Id.* This observation can only have a chilling effect on a prosecutor's rebuttal.[11] The

---

[10] When relying on the "invited response doctrine," the prosecution treads on extremely thin ice. Even when her response is invited, the prosecutor must take care not to "unfairly prejudice" the defendant under the totality of the circumstances. *United States v. Young*, 470 U.S. 1, 12 (1985). The Court has also advised prosecutors to request a curative instruction in lieu of an oral response to perceived impropriety on the part of the defense. *Id.* at 13.

[11] Under any circumstances, the prosecutor must tightly circumscribe her comments during closing argument. For example, the Supreme Court has held that a comment such as

majority is more comfortable relying on prosecutorial remarks that draw "the jury's attention to the distinction between argument and evidence." *Id.,* ¶ 76. However, such comments would be far more effective in a case in which the defendant himself gave the opening statement (*see State v. Johnson,* 121 Wis. 2d 237, 242, 358 N.W.2d 824 (Ct. App. 1984)), than here, where the defense counsel was the culprit and had the assurance of an instruction stressing the defendant's absolute constitutional right not to testify.

¶ 173. The prosecutor inquired what she could say about the defense attorney's fictional tale. She declared that she had "every intention" not to be kind to Attorney Gaskell. And the majority now asserts that, "Any prejudice to the State by defense counsel's opening statement would be outweighed by defense counsel's loss of credibility with the jury for his unsubstantiated opening statement." Majority op., ¶ 78.

¶ 174. However, the more effective the prosecutor's commentary, the more likely Moeck would have had a claim for ineffective assistance of counsel if he were convicted. *See Barrow v. Uchtman,* 398 F.3d 597, 606–07 (7th Cir. 2005), and *United States ex rel. Hampton v. Leibach,* 347 F.3d 219, 257–60 (7th Cir. 2003), for the proposition that unfulfilled promises by defense counsel to present personal testimony from a criminal defendant are highly suspect under *Strickland v. Washington,* 466 U.S. 668 (1984).

---

"[t]hese things [the defendant] has not seen fit to take the stand and deny or explain" is improper. *Griffin v. California,* 380 U.S. 609, 611 (1965). Even a comment that the prosecution's case is unrebutted or undisputed may be seen as impermissible if, as here, the defendant is the only witness who could conceivably rebut or dispute the prosecution's case. *See United States v. Cotnam,* 88 F.3d 487, 497 (7th Cir. 1996).

¶ 175. During the instructions conference, the court weighed cautionary instructions, the possibility of prosecutorial comment in the closing argument, and the nature of the prejudice to the State. The court heard contrasting views from the two sides. The court saw and heard the defendant refuse to waive objection to prosecutorial comment. The court had read case law on improper comment in opening statements and had asked the court reporter to read back a portion of the opening statement.

¶ 176. Against this background, the majority's conclusory determination that the circuit court erred as a matter of law in its exercise of discretion is a virtual repudiation of the sound policies outlined in *Arizona v. Washington.* The Double Jeopardy Clause of the United States Constitution does not mandate this result.

¶ 177. For the foregoing reasons, I respectfully dissent.

¶ 178. I am authorized to state that Justice JON P. WILCOX joins this opinion.